*Twenty-Third Judicial District.*

In the Court of Common Pleas of Berks County.

(*In Equity.*)

PHILA. & READING R. R. CO. *v* BERKS COUNTY R. R. CO.

The legislative grant to a railroad company of a right to build a railroad along certain streets of a city, is not a contract to authorize such railroad company to occupy the whole of the street, to the exclusion of other railroad companies or individuals.

**Motion to continue preliminary injunction.**

Opinion of the court delivered May 12, 1872, by

WOODWARD P. J. Upon the presentation and filing of the bill of the plaintiffs, it was agreed by the counsel of the parties that the questions in issue should be disposed of on this motion.    No preliminary injunction, therefore, was actually granted, the defendants having stipulated that until the decision of the court, no active steps should be taken in the prosecution of their work against which it was the object of the bill to guard. As the record stands in connection with the agreement, the effect of a denial of the motion as to part of the issue is the same that would follow an order to dissolve an injunction, and so far as the issue may remain undecided, the defendants are in the position they would occupy if an injunction had been issued at the outset of the cause.

This is a controversy confined entirely to two private corporations, and involving primarily, and almost exclusively, a question of legislative power. There is no suggestion that the rights of any individual citizen are to be invaded, and although the appropriation of two of the streets of the city of Reading to the use of the defendants is contemplated, it is alleged by both the parties that this appropriation has been expressly sanctioned by the municipal authorities.    Freed as it is, therefore, from all outside embarrassments, the issue here is exceptionally definite and distinct.

On the 20th of March, 1869, the West Reading Railroad Company was incorporated, with power to build a road from the Lebanon Valley Railroad at any point between Fourth street and the Schuylkill to a point on Canal street near the Reading Gas Woaks, and thence to the Henry Clay furnace, by such route as should be deemed best, and across and along such streets in the city of Reading as it might be found expedient to use. By the fourth section of the charter, it was provided that the consent of the city councils should be obtained before the company should use, cross or occupy any of the streets; that such consent should be deemed to have been given if within thirty days after the passage of the act the councils should not have signified their disapproval of it " by ordinance duly passed ;" and that in constructing the road along the streets, referred

to, the company should conform to the grades established by the Councils. Under this charter (which subjected the Company to the provisions of the general law of the 19th of February, 1849,) the road was constructed in part over lands acquired from private owners, and in part along Third, Front and Canal streets, to its present terminus near Sixth street. Its entire length is one mile and eighty-five hundredths of a mile. There are numerous sidings and turnouts connecting the main track with the various industrial establishments along and upon both sides of the road. From the affidavit, filed in a former suit between these parties, and read in this hearing, made by the owners of the property reached by these side tracks along the parts of Front and Canal streets now in dispute, it appears that the sidings and turnouts were built at their expense, and that they have consented to such interference with them as may be made necessary by the construction of the road of the present defendants. On the fourth day of April, 1873, by agreement between the two corporations, the West Reading Railroad Company, with their property and franchises, became consolidated with and merged in the Philadelphia and Reading Railroad Company, the plaintiffs in this suit.

On the 29th of March, 1871, the Berks County Railroad Co. was incorporated, "with power to construct a railroad from a point on the Wilmington and Reading Railroad at or near Birdsboro, in Berks county, by the most available route to and through the city of Reading, and thence to connect with any railroad or railroads then built in the county of Lehigh." The company, by their charter, were made subject to the provisions of the act of the 19th of February, 1849. By a supplement to the charter, approved the 22d of April, 1873, the Berks County Railroad Company were authorized "to construct any portion of their road on Front street or Canal street in the city of Reading, and for this purpose, * * * to lay out and construct along and over said streets, on the eastern side thereof, a single track railroad, with the necessary turnouts and switches, and to cross any other railroad or sidings on or along said streets at grade." The exercise of this power was made subject to the approval of the city councils, and it is admitted by the parties that the approval has been obtained.

In view of this recent legislation, and apprehension of the action of the defendants under it, this proceeding has been commenced by the plaintiffs. The bill alleges that under the charter of the West Reading Railroad Company and by virtue of the appropriation of Front and Canal streets, which they made by the construction of their road, they "acquired and became entitled to occupy, use and enjoy the line of both streets from near Penn street to Sixth street, of their entire width, for railroad purposes, exclusively of all other railroads and persons." It is contended that under the Act of 1849, the company were authorized to occupy ground sixty feet in width; that their road was located, and the right of way through lands of private persons was acquired of the full width of sixty

feet.   Front and Canal streets being of about the same width, and that, although a single track was constructed along the centre of the streets, yet the Company never relinquished their right to occupy the entire width of the roadway and at their convenience to exclude the public therefrom.   The bill further charges that the defendants are about to construct their road and turnouts along and over the eastern side of Front and Canal streets within the limits of the location of the plaintiffs; that the effect of this construction will be to cross, cut and intersect the main track of the railroad of the plaintiffs and their sidings and turnouts; that the intervention of another road between the plaintiffs and the line of the streets, intersecting the turnouts and sidings to the private establishments on the eastern side, will practically cut off the communication of the plaintiffs with their customers and will ever prevent them from obtaining additional facilities for the transaction of their business on that side of the road; and that any turnouts laid by the defendants into private property on the western side of the streets, crossing and cutting the main track of the road of the plaintiffs, and thus interrupting its continuity, will cause them great and irreparable damage.   Finally, the bill charges that the Act of the 22d of April, 1873, is a violation of the provision of the Constitution of the United States; that no State shall pass any law impairing the obligation of contracts, inasmuch as it contemplates the taking and occupation of portions of Front and Canal streets heretofore occupied by the West Reading Railroad Company, without providing compensation for the injury to the property and franchises of the plaintiffs which it will cause; and that no compensation has been made, and no adequate security has been tendered by the defendants for the damages which the plaintiffs will sustain.   Upon the grounds thus set forth, a perpetual injunction is asked against the defendants.

The direct response made to the allegations of the bill of the plaintiffs on behalf of the defendants, consists in the affidavit of their Chief Engineer to the effect "that the intervention of another railroad between that of the plaintiffs and their customers, will *not* practically cut off communication with them, and will *not* prevent the plaintiffs from obtaining additional facilities for the transaction of business on that side of their railroad; and that the laying of turnouts by the defendants into private property on the west side of the street, will *not* be an irreparable injury or damage to the plaintiffs."   Upon the record thus made up, this motion has been submitted to the court, the plaintiffs demanding and the defendants resisting the maintenance of this injunction.

What was the nature and what the extent of the rights acquired in these streets by the West Reading Railroad Company?   It can hardly be pretended that the Act of the 20th of March, 1860, of itself, created a contract by which the title to the line of roadway in controversy became vested.   Cases can be conceived where a legislative grant of the use of a

particular street would have such an effect, but they would be cases where some public necessity was to be met, or where some anticipated and apparent public benefit was to be gained. There, the public necessity or the public benefit would form the consideration. And they would be cases, also, where the language of the grant would be definite, and the description of the locality specific and precise. Here, the authority given was to construct a railroad along such streets of the city of Reading as it might be found expedient to use. The only limitations as to choice which the act contained were in the provisions that the road should commence west of Fourth street; that at some point near the gas works it should be on Canal street; and that its line should extend to the Henry Clay furnace. With nothing done under it, the mere granting of the charter would in no way have affected the power of the Legislature to give to another corporation the specific right of way—the exclusive right of way, indeed, if in the legislative judgment that would have been expedient—over any one of the streets which had been made subject to the West Reading Company's selection. It amounted only to a license of no binding validity as against the commonwealth and the public, and revocable at any time at the discretion of the legislature. It is clear that the terms of the act alone gave to the company no contract right.

But the route was selected, and the line of the railroad was built. The expenditure made on the faith of the statute formed a consideration, and converted the license into a contract. The action of the company unquestionably created vested interests which no subsequent legislative enactment could disturb. The only question is, how far did those interests reach? The plaintiffs claim that they extended to the limits to which the appropriation of territory might have been made, and that, in fact, they acquired the title to the whole roadway on Front and Canal streets for railroad purposes. The defendants insist that they were confined to the limits of the territory which was actually appropriated. The recognition of some distinction between the authority of a railway corporation over a street upon which it has received a license to erect its structures, and the dominion it exercises over land it has bought and paid for, forces itself upon the mind inevitably and instinctively. In the latter case its power is absolute, limited only by the law that limits its general corporate franchises. In the former case, its power is just that which it has derived from express legislative grant, measured by the very terms of the grant or by manifest and necessary implication from those terms. Before the act of 1860 was passed, these streets were public and common highways—easements belonging to the mass of citizens of the commonwealth—and were subject to the absolute control of the Legislature. With this absolute control, the Legislature in granting the charter, agree on certain terms to part. That is, they gave the West Reading Railroad Company the right of way over these highways, if the company should select them

as part of its railroad route.   When the appropriation was made, and the road built, the right of eminent domain in the commonwealth was relinquished to just the extent stipulated for by the Legislature.   The power of the company to build a road on any other street between Fourth street and the Schuylkill was gone.   The authority to build a road on the three streets selected had been exercised.   The company was secure in the enjoyment of its property and franchises, and the commonwealth was left invested with all the right of eminent domain which the legislature of 1860 had not surrendered.   The grant was not of the streets, nor of a territory 60 feet in width, but company's interests are not to be measured by the right of way for a railroad.   The portions of these streets which they did not appropriate for the purposes of their road, belong to the plaintiffs and are subject to their control no more than the dozen other streets which the West Reading Company might have selected for their line under their charter, and which they did not appropriate at all.   The power of the legislature over these highways, subject only to rights which had been acquired by actual location and occupancy, and the authority of the defendants to construct their road under the act of the 22d of April, 1873, are believed to be unquestionable.

Without encumbering this opinion with reference to the mass of authorities that bear upon the general question at issue here, it is enough to say that the views that have been expressed are believed to be in direct conflict with no case that was referred to upon the argument, and to be in general accordance with the decisions of the Pennsylvania courts, which have been harmonious and uniform upon this branch of the law.   The apparent exception of the case of Yost v. The Philadelphia and Reading Railroad Co., Leg. Int. 15 March 1872, can hardly be called one.   There can be no doubt of the propriety of the ruling in that case on general grounds, and under the facts disclosed the rule enforced in favor of the railroad company could hardly be stated too emphatically.   Under legislative authority to use the streets in question for railroad purposes, tracks had been laid from time to time, and at different times, until the entire street was occupied.   Of course there was no room left for the exercise of any remaining public right, and the right itself was gone.   Reading his opinion in that case in the light of his opinion in Norristown v. Moyer, 17 P. F. S. 355 it is evident that all Judge Ross designed to say was, that where the Legislature had given a railway corporation the right to lay tracks on a highway, and the right had been exercised by the appropriation of the whole highway, interests were vested which were exclusive and which subsequent legislation could not impair.   In the present case, the plaintiffs have a railroad of a single track upon streets sixty feet wide, and the opinion of Judge Ross in Norristown v. Moyer proves such an interest to amount not to ownership of a highway, but to an easement in it.

The sidings and turnouts diverging from the main track of the West

Reading road afford no reason for denying to the Berks County Company the privilege to construct their line.    The railroad of the West Reading Company has become a mere siding of the road of the plaintiffs.    It is less than two miles long.    Its lower terminus is near Sixth street, and at that point it connects with nothing.    The bill declares that its business consists wholly of the transportation of coal and material to, and of lumber, stone and other merchandise, in large quantities, to and from, the establishments along its line.    Besides crossing the main West Reading track at grade, the Berks County Road will cut and cross, also at grade, three or four sidings.    It has not been suggested that the existence of these structures will render the construction of the new road impracticable. Nothing has been shown to indicate that their existence will cause any essential difficulty.    Very probably some inconvenience will arise from these interferences.    Every man who drives a buggy through one of the streets of a town suffers more or less annoyance from the fact that other people drive other buggies through other streets that intersect his route.    Such inconvenience as will attend the cutting of these side tracks, and the subsequent use of them, are inevitable whenever lapse of time or the growth or change of business makes the erection of a new road along the line of an old one necessary.    The necessity is the justification of the interference, and the ascertainment of the existence of the necessity is the function of the legislature.    That the power of the legislature is ample to exercise this function at their discretion where a road is subject to the reservation of the right to amend, alter or repeal its charter, is supposed to be free from doubt.    In this case, with ordinary skill in adjusting the crossings, and with ordinary caution in the use of the sidings by the one company, and in the working of the new line by the other, no significant mischief is to be apprehended.

No security has been given or tendered by the defendants for the injury which the construction of their road may cause to the structures with which they will come in contact.    The main West Reading line will have to be crossed.    To whomsoever the sidings belong, they are in the possession and use of the plaintiffs—are of value to them—and would be valueless if connection with the road were severed.    Such as they are, it is believed that the rights of the plaintiffs are property rights which should be protected in the ordinary way.    But apart from this, there is another reason why a bond should be given.    In a note appended to the brief that Mr. Gowen furnished to the court, a fact is stated which was not referred to upon the argument, and is not shown by the record.    The note says that since the West Reading Road was built, a topographical survey of the city of Reading has included within the limits of Front and Canal streets lands which were pveviously private property, and over which the company had purchased from private owners the right of way.    This fact may have no bearing on the general question in the cause, but it affords an ad-

ditional reason for requiring security for damages. Before entering upon the construction of their road, the defendants should file the usual bond in the usual form.

So far as the construction of the new road on the east side of the streets is concerned, it is not seen that the legislature has left any duty to be performed by the court under the act of the 19th of June, 1871. The act of the 22d of April, 1873, makes specific provision for every contingency contemplated by the former act.

A grave question will arise whenever the defendants shall propose to construct sidings on the western side of the streets. The main track of the West Reading Road would have to be cut in each instance. The defendants do not now ask a decree declaring their right to build these sidings. The subject is referred to because it is raised by the record, and it is necessary to say that it is left open. Certainly the court would not permit the construction of these sidings without being satisfied by the report of a board of engineers or by other proceedings under the act of 1871, that such an interference with the main track of the West Reading road would be reasonable, safe and just.

And now, 12th May, 1873, it is ordered and decreed that the motion to continue injunction, so far as it applies to the right of the defendants to cross the main track of the plaintiffs, and to construct a single track railroad along the eastern side of Front and Canal streets, be overruled and denied :---The defendants being authorized to construct their road on giving security for such damages as the plaintiffs may sustain, in due and legal form. And it is further ordered and decreed that the said motion, so far as it applies to the construction by the defendants of sidings, turnouts or switches on the west side of said Front and Canal streets, remain open and undetermined, and subject unto the further order of the court. By the court.

*James E. Gowen*, Esq., and Hon. *Henry Van Reed*, for plffs. *George F. Baer*, Esq., and Hon. *Wayne McVeagh*, for defts.