## Incompatible Offices

PACKEL, Attorney General, September 18, 1974.— Recently, a Board of School Directors in the Commonwealth elected as their superintendent a member of

the House of Representatives of the Legislature of the Commonwealth. The term of all members of the House of Representatives expires on December 1, 1974. You have been asked to deliver to the newly elected superintendent the commission of the office of school district superintendent. We understand that the newly elected superintendent intends to serve out the remainder of the term as Representative while undertaking the duties of school superintendent.

In light of these circumstances, two questions arise requiring our response:

(1) Under Article II, §6 of the Constitution of the Commonwealth of Pennsylvania, is the office of State Representative incompatible with the office of school district superintendent so that one person may not hold the two offices simultaneously, and;

(2) If so, does the Secretary of Education have the duty to deny the issuance of a district superintendent's commission to a person who is currently a member of the State House of Representatives?

It is our opinion, and you are so advised, that the offices of State Representative and school district superintendent are incompatible under the provisions of article II, sec. 6, of the Pennsylvania Constitution and section 15 of the Act of May 15, 1874, P. L. 186, 65 PS §16 and you, as Secretary of Education, are required to deny the issuance of the commission to the elected but ineligible school superintendent.

Article II, sec. 6, of the Constitution of the Commonwealth of Pennsylvania provides:

"*No* Senator or *Representative shall,* during the time for which he was elected, *be appointed to any civil office under this Commonwealth to which a salary, fee or perquisite is attached.* No member of Congress or other person holding any office (except of attorney at law or in the national guard or in a re-

serve component of the armed forces of the United States) under the United States or this Commonwealth to which a salary, fee or perquisite is attached shall be a member of either House during his continuance in office." (Emphasis added)

In addition, section 15 of the Act of May 15, 1874, P. L. 186, 65 PS §16, states:

"No senator or representative shall, during the time for which he shall have been elected, be appointed to any civil office under this commonwealth; and no member of Congress or other person holding any office, except of attorney-at-law or in the militia, under the United States or this Commonwealth, shall be a member of either House during his continuance in office. They shall receive no other compensation fees or perquisites of office for their services from any source, nor hold any other office of profit under the United States, this state or any other state."

The cases and opinions construing article II, sec. 6, and section 15 of the Act of May 15, 1874, 65 PS §16, make no distinction between the terms "civil office" and "public office".[1] The few cases and the several Attorney General's Opinions have dealt with two issues:

(1) Whether the position involved was an office or an employment: *Emhardt v. Wilson*, 20 D. & C. 608 (1934), (Supervisor of City Bureau of Weights and Measures was an employe, not an officer); *Packrall v. Lane*, 38 Wash. Co. 193 (1958) (a county commis-

---

[1] The Constitution itself, especially in article VI, Public Officers, uses the terms officers, public officers and civil officers interchangeably. As this office has consistently ruled, it is not the adjectives civil or public with which we are concerned; the controlling word is "office": 1935-36 Opinion of the Attorney General 153, 154.

sioner is an officer, not an employe); 1937-38 Opinion of the Attorney General No. 9 (position of labor foreman in Works Progress Administration was one of employment and not an office under the United States); and

(2) Whether the office is one under this Commonwealth; Commonwealth ex rel. Woodruff v. Joyce, 291 Pa. 82 (1927) (office of poor direction is purely municipal and not one under this Commonwealth); 1953-54 Opinion of the Attorney General No. 21 (office of member of Pennsylvania Turnpike Commission is an office under this Commonwealth).

A civil or public office is one which is created specifically either by the Constitution or by statute: Article VI, sec. 1. The definition of "public office" most frequently cited by appellate courts is the one contained in Richie v. Philadelphia, 225 Pa. 511, 515, 516 (1909):

"In every case in which the question arises whether the holder of an office is to be regarded as a public officer within the meaning of the constitution, that question must be determined by a consideration of the nature of the service to be performed by the incumbent and of the duties imposed upon him, and whenever it appears that those duties are of a grave and important character, involving in the proper performance of them some of the functions of government, the officer charged with them is clearly to be regarded as a public one. . . . Where . . . the officer exercises important public duties and has delegated to him some of the functions of government and his office is for a fixed term and the powers, duties and emoluments become vested in a successor when the office becomes vacant, such an official may properly be called a public officer."

See also Commonwealth ex rel. Foreman v. Hampson, 393 Pa. 467 (1958).

The test to be applied in determining who is an officer was summarized in Alworth v. County of Lackawanna, 85 Pa. Superior Ct. 349, 352, as follows:

"If the officer is chosen by the electorate, or appointed, for a definite and certain tenure in the manner provided by law to an office whose duties are of a grave and important character, involving some of the functions of government, and are to be exercised for the benefit of the public for a fixed compensation paid out of the public treasury, it is safe to say that the incumbent is a public officer within the meaning of the constitutional provisions in question."

We, therefore, find the following facts to be relevent:

(a) The position of school district superintendent has been created by the legislature under article X of the Public School Code of 1949, Act of March 10, 1949, P. L. 30. The General Assembly has provided that or [t]he "the board of school directors in *every* school district . . . *shall* . . . elect a properly qualified person as district superintendent." (emphasis added): P. L. 30, as amended, 24 PS §10-1071(a).

(b) The district superintendent must take an oath of office: 24 PS §10-1004. The superintendent has the power and duty for the duration of a specific tenure, to supervise the public schools within his district: 24 PS §10-1081. Minimum salary levels for district superintendents are set by statute: 24 PS §10-1075.

(c) The position of school district superintendent is specifically created by statute for a specific period of tenure for each superintendent and the powers, duties and emoluments of the office become vested in the superintendent's successor when the office is vacant.

We must, therefore, conclude that the position of a school district superintendent is a civil office within the meaning of article II, sec. 6 of the Pennsylvania Constitution.

We find further support for this position in an opinion dated August 27, 1936, by Attorney General Charles J. Margiotti (Opinion No. 202), in which he determined that the position of an assistant county superintendent in a school was a "civil office under this Commonwealth" within the meaning of the first sentence of article II, sec. 6, of the Constitution and, therefore, ruled that a member of the legislature is prohibited from being appointed as an assistant county superintendent of schools. Since the date of that opinion, the position of county superintendent and assistant superintendent have been abolished and many of the functions of these offices have been transferred to the offices of district superintendent and assistant superintendent, respectively. It is thus entirely consistent with the earlier opinion of this office to declare the position of a district superintendent of schools as a "civil office under this Commonwealth" and thereby incompatible with the office of a member of the legislature.

Furthermore, in Opinion No. 568 dated September 3, 1947, Attorney General T. McKean Chidsey stated that district superintendents are public officers within the meaning of the Constitutional provision prohibiting an increase in salary of public officers during the term of their election or appointment.

Finally, the case of Weiss v. Ziegler, 327 Pa. 100 (1937), indicates that district superintendents have the status of public officers within the meaning of the present constitutional provisions in article VI, secs.

1 and 7, referring to the appointment and removal of civil officers of the Commonwealth.[2]

With regard to whether the office of District Superintendent is an office "under this Commonwealth," the general rule is, an office under this Commonwealth is a State office as opposed to a municipal or local office. The fact that the functions of a district superintendent of schools are confined to a single district is not controlling. It has been held that a common pleas court judge is a State officer: Commonwealth ex rel. Woodruff v. Joyce, 291 Pa. 82 (1927), supra.

A school district is not a constitutional body or a sovereign power: Barth v. Philadelphia School District, 393 Pa. 557 (1958); Pittsburgh School District v. Allegheny County, 347 Pa. 101 (1943). It is a creature or agency of the State legislature to administer the duty, imposed on the legislature by the Constitution, to maintain a thorough and efficient system of public schools; Wilson v. Philadelphia School District, 328 Pa. 225 (1937). A school district is a mere agency of the State for educational purposes ordained by the legislature: Gilberton Borough School District v. Morris, 290 Pa. 7 (1927). Therefore, a school district superintendent, as an officer of a school district, is a person holding an office "under this Commonwealth" within the meaning of article II, sec. 6 of the Constitution.

---

[2] It should be pointed out that in the case of Smethport Area School District v. Bowers, 440 Pa. 310 (1970), the Supreme Court held that a district superintendent was not a public officer for purposes of appellate jurisdiction under the Administrative Agency and Local Agency Laws. However, the court cautioned in footnote 14, that this decision did not affect their earlier decisions construing the tenure provisions of the School Code where they recognized superintendents as public officers, nor did it change the meaning of public officer in the constitutional sense: 440 Pa. 318.

In accordance with the above, it is the opinion of this office, and you are so advised, that the offices of State Representative and school district superintendent are incompatible under the provisions of article II, sec. 6, of the Pennsylvania Constitution, and section 15 of the Act of May 15, 1874, P. L. 186, 65 PS §16.

We turn now to the Secretary of Education's duty under the circumstances.

The Superintendent of Public Instruction (Secretary of Education) is a constitutional officer: Article IV, sec. 1. Pursuant to article VI, sec. 3, of the Pennsylvania Constitution, he must take an oath to "support, obey and defend the Constitution of the United States and the Constitution of this Commonwealth."

Since the offices of superintendent and member of the State House of Representatives are constitutionally incompatible, it would be a violation of the Secretary of Education's oath of office for him to grant a district superintendent's commission to a member of the House of Representatives.

In addition, the School Code requires the secretary to deny the issuance of the commission.

The powers and duties of the Superintendent of Public Instruction are not enumerated in the Constitution. Therefore, it is the province of the Legislature to spell out the superintendent's duties. The Administrative Code of 1929, Act of April 9, 1929, P. L. 177, as amended, 71 PS §352, provides that the Superintendent of Public Instruction shall have the powers and duties to administer all the laws of the Commonwealth with regard to the establishment, maintenance, and conduct of the public schools.

Section 1078 of Chapter X of the Public School Code of 1949, Act of March 10, 1949, P. L. 30, as amended, 24 PS §10-1078, specifically states:

"District superintendents . . . shall be commissioned by the Superintendent of Public Instruction."

A commission is generally defined as a warrant or authority issuing from the government, or one of its departments, empowering a person named to do certain acts, or to perform the duties and exercise the authority of an office: Blacks Law Dictionary.

Pursuant to 22 Pa. Code §49.41, the Department of Education issues commissions in the form of a certificate of appointment for a specific term in the school year when the provisions of article X of the Public School Code of 1949, 24 PS §10-1001, *et seq.,* have been met.

Article X provides, inter alia, for the election and appointment of district superintendents. Section 1071, as amended, 24 PS §10-1071, states, inter alia:

"The board of school directors in every school district . . . shall, . . . by a majority vote of all the members thereof, elect a properly qualified person as district superintendent." (Emphasis added)

The Legislature has stated that to be properly qualified for purposes of being commissioned a district superintendent the person must be of good moral character, 24 PS §10-1002; meet minimal academic requirements, 24 PS §10-1003; take an oath of office, 24 PS §10-1004; and be elected in conformity with certain enumerated procedures, 24 PS §10-1073. However, meeting all these criteria is not necessarily enough to be a qualified person for the position of district superintendent. In addition, the person must not be prohibited from assuming the office by either a statutory or constitutional disqualification. When a person is ineligible to an office by reason of a disqualification, he or she must discard the disqualification before being appointed: Commonwealth v. Shoener, 1 Foster 158 (1873); Commonwealth v. Pyle, 18 Pa. 519 (1852).

A person who holds an incompatible office to the one to which he or she is to be appointed is disqualified from being so appointed; Commonwealth ex rel. Brothers v. McDowell, 359 Pa. 304 (1948). Therefore, it is our opinion, and you are so advised, that a member of the State House of Representatives is under a disqualification from being appointed to the office of school district superintendent, since the two offices are constitutionally incompatible. With this disqualification, a member of the State House of Representatives could not be a "properly qualified person" within the meaning of section 1071 of the School Code. Therefore, it is our opinion, and you are so advised, that it is the duty of the Secretary of Education to deny the issuance of a district superintendent's commission to a member of the House of Representatives.

While, in general, the resignation from one incompatible office will remove the disqualification and will allow the person to assume the other office, this is not the case under section 6 of article II of the Pennsylvania Constitution. The beginning of section 6 states that no Representative shall "during the time for which he was elected" be appointed to any civil office under this Commonwealth. As Attorney General Robert E. Woodside stated in Official Opinion No. 641, dated August 24, 1953:

"The language of Article II, Section 6 of the Constitution leaves no doubt that the prohibition of that section applies whether or not a member of the General Assembly should resign."

Therefore, you are advised, that the resignation of a member of the House of Representatives will not make him eligible for appointment for the office of district superintendent during the time for which he had been elected to the General Assembly.

The Constitution provides that the term of service of a State Legislator shall begin on the first day of December next after his election: article II, sec. 2. Therefore, the terms of the members of the present General Assembly who have not been reelected to office will expire December 1, 1974, the date when the terms of their successors will commence: 1937-38 Opinion Attorney General No. 201.