# Commonwealth, ex rel., Gast, *v.* Kelly, Appellant.

*Elections—Validity—Proclamation—Knowledge of electors.*

1. An election will be sustained notwithstanding there was no proclamation if the electors had general knowledge of it and a reasonable number of votes were polled.

*Elections — Borough councilmen — "Unexpired term" — Act of May 14, 1915, P. L. 312.*

2. Where at an election for borough councilmen at which councilmen were to be elected for an unexpired term, the tickets did not use the word "unexpired" but had the particular office segregated on the printed ballot "Council—Short term (Vote for one)" the failure to put the designation in the precise language of the statute did not invalidate the election, as the statute (Act of May 14, 1915, P. L. 312) does not declare the irregularity to be fatal, and, under the facts of the case, the deviation from the statutory requirements did no harm.

*Elections—Certificate of election—Acts of June 13, 1840, P. L. 683, and April 3, 1851, P. L. 320.*

3. Where a successful candidate for borough councilman did not receive the certificate called for by the Acts of June 13, 1840, P. L. 683, and April 3, 1851, P. L. 320, providing that the inspectors and judge of election shall make out a certificate of election, but did secure one from the clerk of the court to which the election officials had made their return, and it appears that this was the customary credential presented by councilmen in the borough in question and it is admitted that the holder of the clerk's certificate received a substantial majority of the votes cast at the election, the nonproduction of the proper certificate in a quo warranto proceeding is immaterial.

4. It is by the public expression through the ballot box that title is derived to an elective office; the certificate of the board of canvassers is merely evidence of the person to whom the majority of votes was given; while the certificate may be conclusive in a controversy arising collaterally or between the person holding it and a stranger, in a proceeding instituted in the name of the people it is only prima facie evidence of the right.

*Municipal officers—Borough councilmen—Stock holding in municipal contracting company—Acts of March 31, 1860, P. L. 382, and May 28, 1907, P. L. 262.*

5. Where a statute declares that certain disqualifications shall render a person ineligible to an office, he must get rid of his disqualification before he is appointed or elected; but if the law merely forbids him to hold or enjoy the office or exercise its duties, it is sufficient if he qualifies himself before he is sworn.

6. One who is a stockholder in a corporation holding a contract with a borough at the time of his election as councilman thereof who bona fide parts with his stock before taking his seat as a member of council does not forfeit his right to the office.

*Boroughs—Borough councilman—Removal from borough—Vacancy—Resignation—Act of May 14, 1915, P. L. 312.*

7. Although the Borough Act of May 14, 1915, P. L. 312, does not specifically provide that the removal of a councilman from the borough shall leave a vacancy in the office occupied by him, where the facts disclose a removal and an actual abandonment of the office, a vacancy is created.

Submitted October 16, 1916. Appeal, No. 123, Oct. T., 1916, by respondent, from judgment of C. P. Allegheny Co., April T., 1916, No. 163, in case of Common-

wealth of Pennsylvania, ex rel., William Gast, v. Harry
B. Kelly. Before BROWN, C. J., POTTER, MOSCHZISKER,
STEWART and WALLING, JJ. Affirmed.

Quo warranto to determine the title of Councilmen in
the Borough of McKees Rocks. Before MACFARLANE, J.

The opinion of the Supreme Court states the facts of
the case.

The court directed a verdict for relator, upon which
judgment was entered. Respondent appealed.

*Errors assigned* were (1) the judgment of the court,
(2) the form of the special verdict, and (3) the refusal
of the court to enter judgment for respondent non obstante veredicto.

*Edward F. Duffy* and *R. S. Martin,* for appellant.

*Patterson, Crawford, Miller & Arensberg* and *Eckles
& Conrad,* for appellee.

OPINION BY MR. JUSTICE MOSCHZISKER, January 8,
1917:

January 8, 1916, William Gast filed a suggestion for
a writ of quo warranto, in the Common Pleas of Allegheny County, against Harry B. Kelly, averring that a
vacancy had occurred in the council of the Borough of
McKees Rocks by reason of the removal from that locality, on or about September 1, 1915, of Dr. H. J. Goodrich, one of its councilmen; that, at the regular election
in November, 1915, the relator had been elected to fill
the vacancy thus created, and had duly qualified, but, in
the meantime, the respondent had been permitted to intrude himself into the office in question, without legal
authority or right.

The respondent answered, inter alia, that the removal
of Dr. Goodrich from the borough was but temporary;
that the latter had not resigned or given notice to the

borough authorities of an intention to vacate or abandon his office of councilman; that the subject of his removal was not formally brought to the attention of the council until its regular meeting on December 6, 1915, when a vacancy was declared and he; Kelly, duly chosen to fill the place. The respondent contended that no vacancy existed until the date last mentioned, and, therefore, the relator could not have been lawfully elected in the previous month. He raised no question as to the marking or casting of the tickets at the November election, or concerning the result of the balloting on that occasion, it being admitted by him that Mr. Gast had fairly received a substantial majority of the votes then cast. The validity of the election, however, was attacked upon several grounds, all of which are again urged on this appeal, namely: (1) That no notice prior thereto had been given by the borough secretary to the county commissioners of a vacancy in the membership of the borough council; (2) That no election proclamation had been made by the high constable; (3) That the ballots contained a defective designation, in that they failed to state the candidates for the office in controversy were running for an "unexpired term"; (4) That the relator had not received an election certificate from the proper officials; (5) "That the relator was disqualified to be a member of said council at the time of his alleged election, at the time he took his oath of office, and at the time of the reorganization of the council of said borough, on the first Monday of January, 1916, when he first claimed a seat in said council, as well as at the time the said respondent filed his answer......, because the relator was the owner and holder of 20 shares of the capital stock of the Ohio Valley Water Company, which had been and was furnishing water to the said borough under ordinance and contract"; (6) That, as a matter of fact, and in law, at the date of the election, November, 1915, no vacancy existed in the office here in question.

The relator filed a replication, wherein he averred that

both he and the respondent were candidates for the same place at the election in November, 1915, representing different parties, and that he, Gast, was legally chosen by a considerable majority, the respondent being accordingly defeated.    He denied that the removal of Dr. Goodrich was only temporary, and averred the latter had given up his residence at McKees Rocks and permanently removed therefrom in August, 1915, or thereabouts; further, that this fact was well and generally known to the corporate authorities and the residents of the borough "a long time prior to the fall primaries for the year 1915"; therefore, he contended that a vacancy existed in the office thus surrendered by Dr. Goodrich, and that, the place having been filled by the electors in November, 1915, the borough council had no power to elect the respondent or any one else to the same office in the following December.    He refused to admit any material defect in the ballots, and averred he received the usual election certificate and had taken the oath of office prescribed by law; finally, he denied that "he is now" a stockholder in the before-mentioned water company, or "has any connection whatsoever" with that or any other corporation doing business or contracting with the borough, "either directly or indirectly."

When the case came to trial, binding instructions were given for the relator, and the jury so found their verdict; whereupon the court below entered judgment ousting Mr. Kelly and seating Mr. Gast for the balance of the term vacated by Dr. Goodrich.    The respondent has appealed.    We shall consider the several matters to be determined in the order in which they are enumerated in the second paragraph of this opinion.

The first two contentions of the appellant may be disposed of together.    RICE, P. J., afterwards president judge of the Superior Court, in the case of Com., ex rel., v. Reynolds, et al., 5 Kulp 547, states that "an election will be sustained notwithstanding there was no proclamation, if the electors had general knowledge of it and a

reasonable number of votes was polled." While our attention has not been called to any decision of this court upon the point, yet the law as laid down by the eminent jurist just quoted appears to be supported by respectable authorities in other jurisdictions: see McCrary on Elections, Sec. 178 et seq.; Brightly's Leading Cases on Elections, p. 679, citing Foster v. Scarff, 15 Ohio St. 532, 537, where, in the latter case, Chief Justice BRINKERHOFF states, "We have no doubt that where an election is held in other respects as prescribed by law, and notice in fact of the election is brought home to the great body of the electors, though derived through means other than the proclamation which the law prescribes, such election would be valid." In the case at bar, the electors of the district had ample notice at the fall primary in 1915 of the alleged vacancy; for there was a spirited contest over the place, with all the notoriety which inevitably accompanies such a campaign, both at that time and at the following general election in November, when a much larger vote was cast than usual, apparently because of the struggle to gain this particular office. In view of these circumstances, and since the election at which the relator was chosen was held on the regular day ordained by law, in the customary place and by the proper officials, it is now too late to question its validity for want of the usual proclamation or other prescribed notice.

As to the third ground of complaint. The Borough Act, May 14, 1915, P. L. 312 (p. 412), Sec. 2, of Art. II, Ch. 8, provides: "The borough council may fill any vacancy in their body until the municipal election next following, at which election a sufficient number of persons shall be chosen to fill such vacancies for the unexpired term. The voters shall designate on their ballots that the persons thereon named are voted for to fill an unexpired term." The tickets here in question did not use the word "unexpired," but they had this particular office segregated on the printed ballot, under the following designation: "Council—Short Term (Vote for

one)." On the established facts in this case, the failure to put this designation in the precise language of the statute did no harm; for it is plain beyond doubt that the electors knew the situation and that they were voting to fill the unexpired term of Dr. Goodrich. We recently had occasion to discuss a complaint somewhat akin to the one now before us, in Knight v. Coudersport Borough, 246 Pa. 284, 289, and there said: "If the law declares a specified irregularity to be fatal, the courts will follow that command, irrespective of their views of the importance of the requirement. In the absence of such a declaration the judiciary endeavor, as best they may, to discern whether the deviation from the prescribed form......had or had not so vital an influence ......as probably prevented a full and free expression of the popular will. If it had, the irregularity is held to vitiate the entire return; otherwise, it is considered immaterial." See also McCrary on Elections, Secs. 540, 549 and 549a; and Brightly's Leading Cases on Elections, p. 266. There is no merit in the present assignment of error.

So far as concerns the fourth ground of complaint, it is true the Act of June 13, 1840, P. L. 683, Sec. 1, provides that the inspectors and judge of election shall make out a certificate "for each person chosen as......a township officer, which certificate shall be delivered to the person so chosen," and that Sec. 14 of the Act of April 3, 1851, P. L. 320, provides that borough elections are subject to all the laws regulating township elections, "so far as applicable." The relator did not receive the certificate called for by these acts of assembly; but he did secure one from the clerk of the court to which the election officials had made their return, and, so far as the evidence shows, such was the customary credential presented by councilmen in the Borough of McKees Rocks. Whether or not this certificate would, under ordinary circumstances, be sufficient, makes but little difference here, for, since it is freely admitted by the respondent

that the relator received a substantial majority of the votes cast at the election, it follows he was entitled to a proper certificate; or, to put the proposition in another way, his prima facie right as the successful candidate at the November election being assented to, the nonproduction of a proper certificate showing that fact, so far as the present controversy is concerned, is immaterial. "It is by the public expression......through the ballot box that title is derived to an elective office; the certificate of the board of canvassers is merely evidence of the person to whom the majority of votes was given. The certificate may, indeed, be conclusive in a controversy arising collaterally, or between the person holding it and a stranger, but when this proceeding is instituted in the name of the people, it loses its conclusive character, and becomes only prima facie evidence of the right": Brightly's Leading Cases on Elections, p. 435, quoting from People v. Cook, 8 N. Y. 67. See also McCrary on Elections, Sec. 374. Moreover, in this case, the borough council did not refuse to receive the relator because he had not presented a proper certificate of election, but for quite a different reason, as we shall indicate in the next paragraph of this opinion.

The fifth complaint raises a most important point, and, for purposes of its determination, we shall assume that the relator at the time of his election was a stockholder in a company which held a contract with the borough; further, that he continued as such until immediately before the filing of his replication; when, the proofs show, he bona fide parted with this stock. It appears, however, that when Mr. Gast asked admission to the council, he was not refused because of his interest in this company, but specifically upon the ground that the place he claimed was already filled; further, that the council had elected the respondent, Mr. Kelly, to this place in December, 1915, because, in its opinion, no vacancy had existed in November, when Mr. Gast was elected. These being the undisputed facts, it becomes

necessary to decide whether or not the action of the relator, in bona fide parting with the stock in question, prior to the order of court seating him as a member of the borough council, was sufficient in law to qualify him for admission to that body.

The Act of March 31, 1860, P. L. 382, Sec. 66, provides: "It shall not be lawful for any councilman......to be ......in anywise interested in any contract for the sale or furnishing of any supplies......for the use of any ......municipality......of which he shall be a member. ......Any person violating these provisions......shall forfeit his......office......and shall be guilty of a misdemeanor." The Act of May 28, 1907, P. L. 262, provides "that it shall not be lawful for any......member of council of any borough......to be in any way interested, either directly or indirectly, in any contract for the sale or furnishing of any supplies......for the use of such borough......nor shall any such......member of council......be a......stockholder......of any corporation......in any way interested in any [such] contract; and any person violating these provisions...... shall forfeit his office......and also shall be guilty of a misdemeanor."

In Com. v. Pyle, 18 Pa. 519, 521, we laid down this rule: "Where......a statute declares that certain disqualifications shall render a person ineligible to an office, he must get rid of his disqualification before he is appointed or elected......; but if the law merely forbids him to hold or enjoy the office, or exercise its duties, it is sufficient if he qualifies himself before he is sworn." The latter part of this rule governs in the present case; for, admittedly, the relator "got rid of his disqualification" before the court ordered the borough council to accept his oath and permit him to exercise the duties of the office to which he had been elected. The real purpose of the legislation here in question is to prevent one in public place from, directly or indirectly, being personally interested in contracts which he may have to pass

upon officially; in other words, to forbid his occupying positions in any sense incompatible; but, in this connection, we said in Com. v. Pyle, supra, "A man may hold one office after he has been chosen to another which is incompatible with it, without thereby forfeiting either of them, providing he resigns the first before he enters upon the duties of the last." See also DeTurk v. Com., 129 Pa. 151. The learned court below properly ruled the point under discussion in favor of the relator.

There remains but one other matter to be considered, and that is, did the removal of Dr. Goodrich from the borough create a vacancy in the office occupied by him? The doctor not only transferred his office and home beyond the borough limits, but filed a notice, in the form of an affidavit, with the local authorities, certifying, in effect, that he had permanently left McKees Rocks and surrendered his office of councilman. Although the Act of 1915, supra, does not specifically provide that the removal of a councilman from the borough shall leave a vacancy in the office occupied by him, yet the facts at bar show an actual abandonment of this particular office which, undoubtedly, created a vacancy. In this respect, the present case is quite different from those relied upon by the appellant, where, in point of fact, there was no vacancy, or where, under the peculiar circumstances before us, we held that the vacancy in question did not occur until a formally tendered written resignation had been duly accepted. As truly said by the learned court below, "A vacancy created by removal from the borough is totally unlike that arising from resignation; the first arises instantly from the act of removal, the latter only by acceptance by council. Com. v. Clark, 249 Pa. 109, and Com. v. Krapf, id. 81, are cases of resignation and have no application here." The same may be said of Com., ex rel., v. James, 214 Pa. 319, where there was no vacancy to be filled.

Some of the assignments of error filed in this case have no direct bearing on the material matters now before us,

and these will be passed upon in disposing of the appeal of Edward Pfromm, who also complains of the present judgment; all assignments relevant to the points discussed in this opinion are overruled, and, to the extent indicated, the judgment is affirmed.