## Thomas Colliery Company v. Shenandoah Borough.

*Municipalities—Boroughs—Municipal contracts—Interest of councilman— Corporations—Signing of ordinance by president of council—Water-works— Relocation of pipe-line—Ministerial act—Acts of March 31, 1860, and May 28, 1907.*

1. Where a borough completed a water-works in 1895, a relocation of its pipe-line in 1916 is an act relating to the maintenance of the works, merely ministerial in character, and does not need to be authorized by ordinance.

2. Under the Acts of March 31, 1860, P. L. 382, and May 28, 1907, P. L. 262, a contract authorized by a municipal council having within its membership an employee of the corporation with which the contract was made is not void, but only voidable; if the employee of the corporation did not vote on the contract, the contract will not be declared void.

3. If it appears that the employee in question was also president of the council, his act in subsequently signing the contract is merely ministerial and does not render the contract void.

*Boroughs — Increase of debt — Borrowing capacity—Intention—Case for jury.*

4. In a proceeding to test the propriety of entering into a contract, where it is alleged that the borough had exhausted its borrowing capacity, the question whether the borough council had a reasonable expectation that the resources of the borough would produce sufficient revenue to meet the current expenses of the fiscal year and so justify the contract is a question of fact for the jury.

Motion for new trial. C. P. Schuylkill Co., Jan. T., 1918, No. 133.

*D. W. Kaercher, Henry Houck, P. H. Burke* and *J. A. Noecker,* for plaintiff.
*E. D. Smith* and *L. B. Edwards,* for defendant.

BERGER, J., Oct. 19, 1925.—This is a motion for a new trial filed by the defendant, the jury having rendered a verdict for the plaintiff in an action upon a contract for work done in the relocation of a pipe-line. The Borough of Shenandoah, by an ordinance enacted May 5, 1892, was authorized to construct and erect a municipal water-works for the purpose of furnishing and

distributing to its inhabitants a sufficient supply of water for domestic use; for the protection of property from destruction by fire; and to acquire streams of water and adjacent lands, as well as rights of way, to carry out the intent of the ordinance.

Pursuant to this ordinance, water-works were constructed and have been operated by the borough since 1895. The pipe-line for the distribution of water from the dam or reservoir was located to run over coal land owned by the City of Philadelphia, trustee under the will of Stephen Girard, deceased, and leased by it to the Thomas Coal Company for the purpose of mining coal from the land. The City of Philadelphia and the coal company filed an injunction bill against the Borough of Shenandoah Oct. 5, 1893, and obtained a preliminary injunction restraining the borough from laying its pipe-line over its land and leasehold, and from interfering with the surface thereof, or doing any other act or thing interfering with the mining operations of the coal company. The bill in equity was never brought to final hearing, because the borough, after having been thus restrained, proceeded to acquire the right of way for its pipe-line by virtue of its right of eminent domain and instituted the necessary proceedings for the assessment of damages to No. 229, July Term, 1894. Both proceedings were terminated by an agreement dated July 21, 1904, which remains in force, between the City of Philadelphia, trustee, etc., and the Borough of Shenandoah, authorizing the borough to lay its pipe-lines over the city's lands. This agreement expressly reserved the right to the City of Philadelphia, or its lessee or lessees, present or future, to mine out all the coal in the veins underlying the pipe-line without leaving any support for the surface, with the proviso, however, that if the prosecution of mining operations on the land was likely to endanger the pipe-line, written notice of the intended operation should be given by the engineer of the Girard Estate to the Borough of Shenandoah to relocate its pipe-line; whereupon, if this was determined to be impracticable in the manner prescribed by the agreement, the borough then had the option either of maintaining the pipe-line in its original location, upon the payment of the fair value of the coal required to be left in the ground to support the pipe-line, or, if relocation of the pipe-line was determined or admitted to be necessary and practicable, the borough was authorized to relocate the pipe-line on the land at its own expense, but under the supervision of the engineer of the Girard Estate.

The Thomas Colliery Company, a corporation, acquired or succeeded to the leasehold estate of the Thomas Coal Company prior to Jan. 20, 1916, at which time David Glover was highway commissioner and borough engineer for the Borough of Shenandoah. He made an inspection of the pipe-line, at the request of the superintendent of the Thomas Colliery Company, the plaintiff, for the purpose of ascertaining the effect upon it of the mining operations then being carried on by that company, and made a written report to the borough council, in regular session, on Jan. 20, 1916, recommending a relocation of approximately 2000 feet of the pipe-line on account of the danger of its destruction by the mining operations of the colliery company, and that the work of relocation be done by that company in accordance with specifications to be furnished by the borough. The town council, by resolution, accepted the report of the borough engineer; approved his recommendation; directed him to make plans and specifications for the relocation of the pipe-line, and referred the entire matter for further action to the water committee, the highway commissioner and borough engineer and all others interested. The minute of this action was approved at a regular meeting of the town council Feb. 3, 1916. Subsequent negotiations evidently led to an agreement upon

the terms of a contract bearing date April 7, 1916, between the colliery company and the borough, for the relocation of 3150 feet of pipe-line by the former at a fixed price per linear foot, to be paid by the latter. The contract was executed on behalf of the company by its vice-president and secretary, and on behalf of the borough by Robert Patterson, the president of the town council, and its secretary, James Ringler, and was approved by William J. Brown, chief burgess. This contract was presented to the town council at a regular meeting on April 20, 1916, for approval and ratification, which was effected by the introduction and adoption of a resolution as follows: "Resolved, That the contract bearing date April 7, 1916, entered into by the borough officers with the Thomas Colliery Company for constructing the new water-line over the strippings by direction of council, be and the same is hereby approved and ratified. Motion of Lentz and Feist that the resolution be adopted and the contract ratified. Motion carried." From Jan. 20, 1916, the date of the authorization of negotiations for the contract, until the execution of it and the completion of the work contracted to be performed under it by the Thomas Colliery Company, two of its employees, Robert Patterson and George Ringheiser were members of the town council. Thirteen members of the town council were present at the meeting of April 20, 1916, when the contract bearing date April 7, 1916, was approved and ratified, but of these, Robert Patterson was the only employee of the plaintiff.

It is undisputed that the plaintiff performed the work in accordance with the terms of the contract, and that $7437.66, the amount claimed for its performance, is the contract price for the work which was properly done. The defences interposed to prevent recovery on the contract are: (1) That no duly enacted ordinance authorized its execution; (2) that the contract is void in consequence of the relation of Robert Patterson to the plaintiff company as its employee and of his relation to the Borough of Shenandoah as councilman and president of the town council; and (3) that its execution created an unlawful increase of indebtedness. The construction of the water-works having been completed in 1895, the relocation of one of its pipe-lines in 1916 was an act relating to its maintenance, and such acts, being merely ministerial and not legislative in character, need not be authorized by ordinance: Eddy v. Ashley Borough, 281 Pa. 4, 7, 8. The first point of defence was, therefore, ruled against the defendant as a matter of law, and the other two were submitted to the jury, which found against the contentions of the defendant.

Ten reasons have been assigned by the defendant in support of its motion for a new trial, and, as was its right under our rules of court, a reservation was made to file additional reasons and to particularize the other reasons, which allege generally, that error was committed in the rulings on the admission and rejection of testimony, in the charge of the court, and in the disposition of the points for charge. No additional reasons have been filed, however, and the general reasons originally filed have not been made more particular; hence, it is fair to assume that the defendant's reasons for a new trial are predicated entirely upon its contention that the contract is void.

Throughout the trial and on the argument of the motion for a new trial the defendant's counsel have maintained that the contract is void; first, because two employees of the plaintiff company were members of the town council during the entire period in which the contract was made and performed; and, second, that Robert Patterson, the president of the town council, by reason of his employment by the plaintiff company, was incompetent to execute the contract. This contention proceeds upon and requires a construction of so much of the Act of May 28, 1907, P. L. 262, which makes it unlawful for any mem-

Thomas Colliery Company *v.* Shenandoah Borough.

ber of town council to be an agent or employee of any individual, partnership or corporation in any way interested in any contract for the sale or furnishing of any supplies or materials for the borough or doing any work for the borough, and it provides that any person violating these provisions, or any of them, shall forfeit his office and also shall be guilty of a misdemeanor, and upon conviction thereof, be sentenced to pay a fine not exceeding $500.

The Act of March 31, 1860, § 66, P. L. 382, prohibits any councilman from being in any wise interested in any contract for the sale or furnishing of any supplies or materials for the use of any municipality of whose council he shall be a member, under penalty of forfeiture of office and guilt of a misdemeanor. The purpose of this legislation, intended to prevent one in public place from having, directly or indirectly, a personal interest in contracts upon which he may have to pass officially, was extended and enlarged by the Act of May 28, 1907, P. L. 262, so as to prohibit, under like penalty, a member of council from being an agent or employee of an individual, firm or corporation having a contract with a borough for doing work or furnishing supplies or materials to it during any period of time in which their employee or agent is acting in the dual capacity or with the dual interest arising out of his employment and the holding of his office. This disqualification is equally effective, whether the prohibited relationship or interest exists when the member of council is elected or arises afterward, but if existent at the time of his election, he may rid himself of the disqualification by a surrender of his agency or employment and then assume the office to which he was elected: Com. ex rel. Gast *v.* Kelly, 255 Pa. 475, 483. Neither the Act of 1860 nor that of 1907, however, declares a contract void entered into on behalf of a municipality by a municipal body having within its membership persons disqualified to act by virtue of the provisions therein contained. Such contracts are voidable only, and to establish their illegality it is necessary that the making of the contract was dependent upon the vote of a disqualified member of the municipal body: Marshall *v.* Ellwood City Borough, 189 Pa. 348, 353-55. Whether or not Robert Patterson's vote as a member of council was cast on April 20, 1916, to create a contractual relation between the plaintiff, whose employee he was, and the Borough of Shenandoah, of whose council he was at the same time a member, was, therefore, properly submitted to the jury on the testimony of James Ringler, that of thirteen out of fifteen members of council present at the meeting of April 20, 1916, Patterson, the only employee of the plaintiff, did not vote, and of Patrick Broderick and Thomas Purcell, disinterested members of council present, that they did not recollect whether he had voted or not, and the minutes of the meeting that the motion carried. The contract is dated April 7, 1916, and, excepting this date, it has not been shown whether it was executed before or after the passage of the resolution approving and ratifying it on April 20, 1916. The resolution of Jan. 20, 1916, did not authorize the contract in suit; it merely authorized the necessary preliminary steps to that end. The mere affixing of the signatures of the president and secretary of the town council to the contract, if done on April 7, 1916, did not constitute the making of the contract; for, without the express authority of the town council, these officers could not execute a valid contract. The validity or invalidity of the contract must be determined solely upon the action taken by council on April 20, 1916, and the jury has found that Patterson did not vote on the question of the approval or ratification of the contract. The defendant contends further, however, that the affixing of Patterson's name as president of the town council to the contract, irrespective of whether he had voted in favor of its execution or not, does not constitute a legal execution of the con-

tract, because he was disqualified from acting as a member of the town council from the moment the contract was authorized. The execution of the contract by its officers after it was authorized was a mere ministerial act on their part: Breslin v. Earley, 36 Pa. Superior Ct. 49, and might ordinarily have been enforced by mandamus had they refused to execute it. Undoubtedly, the moment the contract was authorized, Patterson, not having given up his employment by the plaintiff, became disqualified to hold the office of town councilman and could have been ousted from office and convicted of a misdemeanor if proper proceedings had been taken. While he continued to be a member of town council, however, though disqualified, all his official acts, if legal otherwise, were legal as those of a de facto officer. The jury having found that Patterson did not vote to make the contract between his employer and the borough, we hold that the contract is not void for a want of execution by a proper officer.

Jan. 4, 1916, the beginning of the fiscal year, the Borough of Shenandoah had entirely exhausted its borrowing capacity, and, therefore, was obliged during that year to live within its means or to depend for the payment of its current expenses upon its actual or expected annual income for the fiscal year 1916: Jackson v. Conneautville Boro. School Dist., 280 Pa. 601, 607. The revenues received during the year 1916, arising from the tax levy made May 18, 1916, and other sources of current revenue, were approximately as follows: Liquor license moneys, $22,080; collections by the chief burgess, $1927.50; collections on the 1916 duplicate, $41,521.01; foreign insurance tax, $440.06; water rents, $31,952.64; miscellaneous revenues, $2012.21. These items of current revenue for the year 1916 aggregate the sum of $99,933.42. In the year 1917 the sum of $5102.10 was collected on the 1916 tax duplicate, and this amount was a current revenue which the town council had a right to anticipate in its 1916 expenditures. The revenues derived from water rents were partly for water supplied in 1915, for which payment was not made until 1916, but the amount of water rents collected during the fiscal year 1916 is $1175.14 less than the water rents charged against customers during that year. The current expenditures of the borough from the beginning of its fiscal year to April 7, 1916, the date of plaintiff's contract, were $5091.80. In addition to this, orders for $28,939.15 had been drawn and paid from Jan. 4 to April 7, 1916, in liquidation of indebtedness incurred in previous years, and assuming this expenditure to have been a proper charge against the current revenues for the fiscal year 1916, there, nevertheless, remained unanticipated revenue as of April 7, 1916, of approximately $60,000 to $65,000. The cash balance in the borough treasury on April 7, 1916, was $9163, and this was more than sufficient to pay the ordinary expense of relocating the pipe-line.

Whether the borough council, if acting in good faith on April 7, 1916, had a reasonable expectation that the license moneys, water rents, the tax duplicate, when definitely ascertained by levy, and the miscellaneous sources of revenue for the fiscal year 1916, would produce sufficient revenue to meet the current expenditures for that year, was, in our opinion, a question for the jury: Addyston Pipe and Steel Co. v. City of Corry, 197 Pa. 41, 48, 49; Jackson v. Conneautville Boro. School Dist., 280 Pa. 601, 607. The motion for a new trial is, therefore, overruled.

The motion for a new trial is hereby overruled and judgment is directed to be entered upon the verdict in favor of the plaintiff upon payment of the jury fee.

From M. M. Burke, Shenandoah, Pa.