## Commonwealth ex rel. Radzievich v. Davis and Minersville Borough Council.

*J. F. Mahoney* and *David Bechtel*, for plaintiff.

*J. A. Noecker* and *Roger Prosser*, for respondents.

HICKS, J., April 23, 1928.—On Jan. 13, 1928, the relator presented his petition for a writ of alternative mandamus, directed against the Chief Burgess, Secretary and Members of the Town Council of the Borough of Minersville, in which he alleged that he was duly elected a member of the Town Council of the Borough of Minersville on Nov. 8, 1927, duly certified and returned as such by the proper election officers, of the 4th Ward, in which he resided, and duly qualified by taking the oath of office as required by law. He further stated that he attended the organization meeting of the town council on the first Monday in January, 1928, with his certificate of election

and his oath of office, the latter being filed with the secretary of the council; that he attended the next regular meeting of the town council on Jan. 5, 1928, when he presented his certificate of election, but was refused enrollment as a member of the town council and permission to participate in the proceedings of that body; that he had been greatly wronged and injured and deprived of the rights and privileges of a member of the town council, and that he was without other adequate and specific relief at law. A writ of alternative mandamus was directed to issue. A return was made by the defendants to the writ of alternative mandamus, in which the election of the relator to the office of councilman in the 4th Ward of the Borough of Minersville is not denied, alleging that no certificate of election was presented and that the refusal of the respondents, members of the town council, to admit the relator as a member was based solely upon the allegation that, after the election of the relator and before the organization meeting of the town council, he removed from the ward in which he was elected, which worked his disqualification and precluded him from taking his seat as a member of council. It was for this reason, the respondents allege, they refused the admission of the relator to their body. To this return of the respondents the relator filed a traverse, in which he denies his removal from the 4th Ward, in which he was resident when elected, reiterates his election and qualifying for the office, and alleging the presentation of the certificate of election and the filing of the oath of office, together with his demand for permission to be enrolled and participate in the deliberations of the town council, averring the refusal of the members of council to seat him.

Testimony was taken, from which it fairly appears that there are only eleven members of council in the Borough of Minersville acting, and that no one is claiming the office to which the relator claims title. It is uncontradicted that the relator presented himself on the first Monday in January, 1928, at the organization meeting of the Town Council of the Borough of Minersville and also at the first regular meeting held on Jan. 5, 1928, and that he filed with the secretary of the town council his oath of office, taken before a notary public. From the testimony, it is also fairly deducible that he had with him, at both meetings, his certificate of election and that it was passed around and discussed by at least some of the members at its first regular meeting on Jan. 5, 1928. In the pleadings filed in this case, the justification given by the respondents—eleven out of twelve members of the town council—for refusing to seat the relator is his alleged disqualification to sit as a member of the town council because, after his election in November, 1927, from the 4th Ward, he removed, in December, 1927, to the 3rd Ward of the borough. There is no question in this case concerning the election of the relator from the 4th Ward, the legality of his election, or that he did not qualify by taking the oath of office, or that he did not have a certificate of election. The fundamental proposition in this case, which is underlying, is whether the town council of a borough may refuse to enroll a member newly elected and participation in the deliberations of the body, there being no question as to the fact or legality of his election, because he removed from the political division in which he was elected and which he was to represent between the time of his election and the beginning of his term of office.

In considering whether mandamus is the proper remedy to direct the town council to admit the relator, it is of interest to repeat that it is admitted by the attorneys for the respondents that no one is in possession of the office claimed by the relator and that there is no adverse claimant. This is shown both by the pleadings and the admission of counsel for the respondents.

Where there is no adverse claimant or officer in possession, mandamus lies to compel the admission to one having an undisputed or a clear legal *prima facie* title to the possession of the office and to the performance of its duties: 26 Cyc., 257.

In the case of Com. ex rel. Giombetti *v.* Conroy et al., 21 Lacka. Jurist, 46, Edwards, P. J., quotes from High's Extraordinary Remedies ch. 11, § 47, as follows: "In determining the extent to which the courts may properly interfere by mandamus with questions relating to the title to and possession of public offices, it is necessary to recur to an important principle, frequently asserted throughout these pages, and which may be properly termed the controlling principle governing the entire jurisdiction by mandamus. It is that in all cases where other adequate and specific remedy exists at law for the grievance complained of, the writ of mandamus is never granted. Applying this principle to cases where relief has been sought to determine disputed questions of title and possession of public offices, the courts have almost uniformly refused to lend their aid by mandamus, since the remedy by information in the nature of a *quo warranto* is justly regarded as the most appropriate and efficacious remedy for testing the title to an office, as well as the right to the possession and exercise of the franchise. And the rule may now be regarded as established by an overwhelming current of authority, that where an office is already filled by an actual incumbent, exercising the functions of the office *de facto* and under color of right, mandamus will not lie to compel the admission of another claimant, nor to determine the disputed question of title. In all such cases, the party aggrieved, who seeks an adjudication upon his alleged title and right of possession to the office, will be left to assert his rights by the aid of an information in the nature of a *quo warranto*, which is the only efficacious and specific remedy to determine the questions in dispute. And whenever it is apparent on the face of the pleadings, that the issue presented involves a determination as to the person properly elected to an office, or entitled to exercise its functions, the writ of mandamus will be withheld."

Mr. Justice Trunkey, in the case of Fire Insurance Co. *v.* Com., 92 Pa. 72, says: "A mandamus, though a prerogative writ and demandable of right in a proper case, will be granted only in extraordinary cases where there would be otherwise a failure of justice. We have used mandamus only as a process in the last resort; never where there was a specific remedy." We find, also, in the case of Com. *v.* Commissioners, 37 Pa. 277, a clear statement of the function of a writ of mandamus by Thompson, J.

There are many cases where the principles stated in the foregoing texts have been applied in a practical way. In Caffrey *v.* Caffrey, 28 Pa. Superior Ct. 22, it was held that mandamus will not lie in favor of a person claiming the office of school director where another person is actually in the office and is recognized as a director by the other members of the board; the remedy being by *quo warranto*. In the case of Com. ex rel. *v.* Gibbons, 196 Pa. 97, it was held that where there was no contest as to a school director's original seat under a valid election, but only as to the legality of his ouster, the remedy of the director is by mandamus to prevent his further unlawful exclusion; and the remedy by *quo warranto* against the person chosen to succeed him does not apply. See, also, Hatton *v.* Brooks et al., 21 Dist. R. 817.

The broad rule has been laid down that where any one has been unlawfully kept out or dispossessed of an office to which he is entitled, mandamus lies to admit or to restore him; that is, where the relator is shown to hold a *prima facie* and uncontested title to an office, a writ or mandate may be

issued to put him in possession of the office: 18 Ruling Case Law, § 178, page 254. The proper remedy of the candidate rejected by the council is a writ of mandamus against the members of the council to compel them to recognize and accept him as a member thereof: 19 Ruling Case Law, § 185, page 885.

The relator's title to the office is uncontested; no one claims his office, and it is admitted that he was legally elected; at least, no issue is raised upon this point in the pleadings. It is true the respondents in their argument urge, for the first time in the case, that "the old member continues to serve," that the town council refused to admit him because he disqualified himself by removal from the ward in which he was elected, and that, therefore, until he is admitted, there is no vacancy—thus creating a contest by the relator for an office held by a "hold-over member," and, hence, mandamus does not lie, but rather *quo warranto*. This reasoning is based upon the Act of March 22, 1927, P. L. 53, which provides: "That any officer of any municipal corporation of this Commonwealth, who hereafter may be, or heretofore has been, elected or appointed, and having qualified, shall hold said office until his successor is elected or appointed, and duly qualifies." This position is fallacious because it omits to note that the relator was elected and did qualify by taking the oath of office, and if he cannot retain the office, it is because he disqualified himself by removal; and if he did remove, a vacancy was created in council by the very act of his removal (Com. ex rel. Gast *v.* Kelly, 255 Pa. 484), which vacancy council must fill (section 901, The General Borough Act of May 4, 1927, P. L. 519), and which vacancy is unfilled, and the Act of March 22, 1927, P. L. 53, does not apply. This was recognized in this case, since the "old member" is not serving and is not participating in councilmanic deliberations. A statutory provision for holding over does not give a claim to office to one whose term has been terminated by the qualification of a successor, if such successor dies before his term begins. In such case, there is a vacancy in the office which should be filled in the proper way: 29 Cyc., § 2, page 1399. And death creates no more certain a vacancy than an admitted removal.

No one being now in possession of the office sought by relator, his title being uncontested and no question raised as to the legality or fact of his election, and the only question involved being an alleged disqualification arising since election, upon which respondents base their right to refuse him admission to the possession of his office, mandamus is the proper remedy: Com. *v.* Fleming, 23 Pa. Superior Ct. 404. It is by the public expression through the ballot-box that title is derived to an elective office, and the relator, it is not denied, obtained title to the office of Councilman in the 4th Ward of the Borough of Minersville through the suffrage of the people therein resident.

Before discussing the final proposition in this case, even though the prolixity of the opinion might be charged as an affectation of learning, but because these matters have been argued by counsel for respondents, and the matter is important, something will be said about the certificate of election which the relator, it is alleged by them, has not formally filed with the secretary of council.

The pleadings in this case exhibit conclusively that the only reason for refusing relator a seat in the borough council was his alleged removal from the ward in which he lived at the time of his election and which he was elected to represent. There is an inferential denial that he presented his certificate

of election to the secretary of council, but no denial that he had one, and a fair inference from the testimony is that he had his certificate of election at the meeting of Jan. 5, 1928, the first regular meeting of the newly-organized council. Rev. A. R. Fiske, president of council, testified that he did not recall that the relator said he had a certificate, but that he did hear Mr. Phalen, one of the councilmen, say that he had, and heard the members discuss the certificate. When asked whether he saw a paper passed around that purported to be a certificate of election and referred to as such, he said: "I think it was. I think there was two or three of them looked at that paper." The chief burgess, Ross Davis, also testified that he heard relator say that he had a certificate of election at the meeting of Jan. 5, 1928, but did not see it. The oath of office of the relator was filed with the secretary at the organization meeting. In this connection, it might be stated that only one of the new members presented a certificate of election, according to the testimony of the chief burgess.

The presentation or filing of a certificate of election by a newly-elected member of a borough council is not made a prerequisite to taking possession of his office. His right to the office grows out of the fact that he was lawfully elected thereto (Com. v. Fleming, 23 Pa. Superior Ct. 404, 410), and if his election at the organization meeting is questioned, then the certificate of election is the only evidence admissible at the organization of the body (Com. v. McAllister, 24 Pa. C. C. Reps. 96), and it is conclusive for that occasion and purpose: People v. Fornes, 175 N. Y. 114, 67 N. E. Repr. 216. But in this case it is tacitly admitted that he was lawfully elected from the 4th Ward; refusal to seat him being based upon his alleged removal from the ward after election and before the organization of council. The General Borough Act of May 4, 1927, § 803, P. L. 519, provides: "Certificates of election of all borough officers shall be filed among the records of the borough." No other utterance on this subject is found in this act. One to whom a certificate of election has been issued is regarded as *prima facie* entitled to the office: Com. ex rel. Ross v. Baxter, 35 Pa. 263. Further, a person having the required certificate of election to membership in a city council is presumably a member-elect thereof, and has the right to have his name placed on the council roll and to participate as a member: Com. v. Philadelphia, 9 Dist. R. 257; Com. v. McAllister, 24 Pa. C. C. Reps. 96; at least until his election is investigated and set aside: Com. v. Philadelphia, *supra*. And it might be added in the words of Com. ex rel. Gast v. Kelly, 255 Pa. 475, 482, "his *prima facie* right as the successful candidate at the November election being assented to, the non-production of a proper certificate showing that fact, so far as the present controversy is concerned, is immaterial. 'It is by the public expression . . . through the ballot-box that title is derived to an elective office; the certificate of the board of canvassers is merely evidence of the person to whom the majority of votes was given. The certificate may, indeed, be conclusive in a controversy arising collaterally, or between the person holding it and a stranger, but when this proceeding is instituted in the name of the people, it loses its conclusive character and becomes only *prima facie* evidence of the right:' Brightly's Leading Cases on Elections, 435, quoting from People v. Cook, 8 N. Y. 67. See, also, McCrary on Elections, § 374. Moreover, in this case the borough council did not refuse to receive the relator because he had not presented a proper certificate of election, but for quite a different reason."

It is admitted in this case by both sides to the controversy that the relator presented his oath of office to the secretary, who filed it at the organization

meeting. This was a prerequisite with which he complied and is in compliance with section 1002 of The General Borough Act, *supra,* which provides: "Before entering upon the duties of their office, the councilmen shall take and subscribe an oath or affirmation . . . [which] shall be entered upon or filed among the records of the borough." Where an official oath is required, the taking of such oath is necessary to the legal possession of the office: Howells *v.* Morris, 25 Dist. R. 946. Therefore, he should have been seated, unless his alleged removal from the ward precluded it, which fact of removal council was legally authorized to pass upon preliminarily before seating or excluding him.

This leads to the question whether the town council could legally refuse him the possession of his office, to which he was newly elected, because of his alleged disqualification through removal from the ward after his election and prior to the organization of the council.

Or, to put the proposition in another fashion, could the town council of a borough legally declare to a newly-elected member seeking admission, "you were legally elected; you have a certificate of election; you have qualified by taking the required oath, but we have decided that you have moved out of the ward which elected you; therefore, we will deny you a seat in council." In support of this proposition, respondents cite Com. ex rel. Quirk *v.* Lally, 10 Phila. 507, which was a mandamus action against a borough tax collector by one elected borough treasurer, commanding the former to pay to him the money collected as taxes. After election, the borough treasurer moved out of the borough. He qualified by taking the oath of office. Pershing, J., dismissed the writ of alternative mandamus because the borough treasurer lost his right to the office by his removal. This case is inapplicable because the borough treasurer was not seeking to gain possession of his office, as in the instant case, but was seeking to exercise the rights and incidents of an office of which he had possession, and the exercise of which he was rightfully denied because of a legal disqualification. Thus, in the instant case, if the council had admitted relator, as they should have done, and it was found in a proper proceeding that he had disqualified himself by removal from the ward, the relator could not legally exercise the rights of a councilman and his very act of removal would have created a vacancy in the office. The same may be said of the cases of Com. ex rel *v.* Yeakel, 13 Pa. C. C. Reps. 615; Com. ex rel. *v.* Lynn, 5 Northamp. Co. Repr. 394. On the other hand, the writer agrees with the law contained in the citations urged by respondents, that the loss of the qualifications necessary to make one eligible for a public office will result in the forfeiture of the office, and that the loss of the qualification of residence creates a vacancy which the council need not adjudicate and can at once fill as provided by law: 29 Cyc., page 1380, par. J; State ex rel. Johnston *v.* Donworth, 105 S. W. Repr. 1055; State ex rel. Forestell *v.* Otis, 230 Pac. Repr. 414, citing Throop on Public Officers, par. 425; Mechem on Public Officers, par. 438. However, all this is not apropos, since council preliminarily, in the instant case, before admitting a newly-elected member who had qualified, adjudicated the question of alleged loss of qualification of residence and denied him possession of his office for that reason. And the citations do not support this action.

The case of Com. ex rel. *v.* James, 214 Pa. 319, is cited by respondents as sustaining their action in excluding the relator. We do not so understand it. In the syllabus of the case it appears: "Where a person claiming that the office of councilman of a borough had been vacated by reason of the removal of the member from the borough has his own name placed upon the official

ballot by some method not prescribed by law, and at the ensuing election his name is voted for by a majority of the electors, he cannot maintain mandamus against the councilmen to compel his admission to office; and this is the case although the petition for mandamus was not filed until there was an actual and admitted vacancy in the office created by the resignation of the previous member." Mr. Justice Elkin, on page 323, says: "In the case at bar, the relator had no legal right to the office, the enjoyment of which he seeks to compel by mandamus, and, under the rule stated, this is the end of his case. There was no vacancy to be filled at the February election in 1905, and his certificate of election is a nullity and conferred no rights on him." And on page 324: "The rights of relator, whatever they be, are derived from his so-called election in February and must be determined under conditions as they existed at that time. If he had no rights, then he acquired none subsequently; if he had rights derived under that election, he continued to enjoy them, irrespective of what Margargle did later [resigned in May following the February election]. He must stand or fall by the conditions existing when he received his certificate of election under which he claims the office. At that time the proper remedy to determine the title to the office as between the relator and Magargle was by *quo warranto.* . . ." A perusal of that case leads irresistibly to the conclusion that the lower court was reversed upon the ground that *quo warranto* was the proper remedy and not mandamus and was based entirely upon the absence of title to the office in the relator and the occupancy of the office which he claimed by a duly elected member at the time that the relator was elected by the popular vote through the wrongful placing of his name upon the ballot. But in the instant case, no such question arises. The fact and legality of the election of the relator are not questioned at all and no one was in possession of the office under any color of right at the beginning of the relator's term of office or at the time that these proceedings were instituted and the hearing had.

No case is presented by the respondents sustaining the proposition that the council was legally justified in refusing to seat the relator because the council alleged he had lost his residence qualification.

The relator was elected to council by the electors of the 4th Ward of the Borough of Minersville, and, therefore, had title to his office, was armed with a certificate of election which was at least *prima facie* evidence of the title to his office, had qualified by taking the statutory oath, which was filed with the council prior to his request for possession of his office, and he was, therefore, legally entitled to exercise its functions, allegations touching his residence qualifications notwithstanding, until his disqualification was determined by another tribunal with judicial powers: Com. ex rel. Horr *v.* McAllister et al., 24 Pa. C. C. Reps. 96. No warrant can be found in law for any borough council in this State passing upon the qualifications and election returns of its own members preliminarily to seating them. Section 901 of the General Borough Act, *supra,* provides for the filling of a vacancy by council caused by removal from the ward, but nowhere does the act give to the council the power to decide, in a contested case, whether a removal actually has taken place. Council may, in the orderly and efficient administration of municipal affairs, act upon the assumption that a vacancy exists by reason of a removal and fill such vacancy, subject always to the review of the courts whether a removal actually took place with the consequent vacancy. Then the contest, however, would be between the appointee of council and the member whose residence qualification was alleged to have been lost. That is not this case, however.

Two decisions rendered by this court are in point and decisional of the question, both of which are unreported, as far as the search of the writer could develop. In the case of Joseph Shuppas *v.* William Landers, President, and Edward Hanney, Secretary, No. 226, July Term, 1910, a petition for a writ of alternative mandamus was presented for the issuance of a mandamus against the respondents commanding them to administer the oath of office to the relator, newly elected school director in Norwegian Township, under the Act of June 25, 1895, P. L. 284. Respondents contended that he was refused for the reason *"that he was not eligible to the office, being of the age of but twenty years, and, therefore, he could not qualify and become a member of the board."* (Italics are that of the writer.) Bechtel, J., declared: "There is no contention here but that the plaintiff received a majority of the votes cast; nor is there any dispute that he presented himself at the proper time and place with the proper certificate of election, seeking to be admitted as a member of this school board. . . . We are of the opinion that the subscribing to the oath of office, together with the presentation of the certificate of election in the manner followed out in this case, rendered this plaintiff a member of this school board, and that it was the duty of the school board to receive him as such member, under this state of facts, and question his right to the holding of the office in the manner pointed out by law, if it was desired so to do." The relator had taken the required oath before a justice of the peace which was deemed sufficient and the administration of the same by the president or secretary unnecessary, so, holding that the relator "is already a member," the mandamus was refused.

In the case of Evan Jenkins et al. *v.* Martin Kelly et al., No. 2, March Term, 1914, decided by this court and unreported, the complainants and respondents represented rival factions of the town council of Minersville. Evan Jenkins and George Young, two of the complainants, presented themselves at the proper time and place with their credentials in the shape of certificates of election signed by the judge and inspectors and their oaths of office and sought to participate in the transaction of the business of the council. This, council refused to permit them to do, claiming that as their terms of office were not designated, they were not properly elected. Bechtel, J., held: "With this contention we have nothing to do at present. The fact that they had, each of them, a certificate of election, properly signed, and an oath of office, proper in form and administered by a proper official, in our opinion, constituted them *de facto* councilmen from the ward which they sought to represent and entitled them to their seats in council. There was nothing more that they were required to do, and our attention has not been called to any authority which confers upon the town council the right to go behind those returns and to determine whether or not these parties were properly elected and entitled to their seats in this body. There is a method prescribed by law by which all this may be questioned, which method may be pursued if it is thought proper so to do . . . at the proper time and in the proper manner."

From the foregoing, the court is of the opinion that the relator should have been received as a member by the town council, received his certificate of election, he having qualified by taking his oath, which was filed with the secretary and permitted him to participate in the councilmanic deliberations. Council had no right to refuse him his seat because of an alleged loss of residence qualification preliminarily adjudicated by it. If he had disqualified himself by removal from the ward, that matter was for decision at another time, in another fashion and in the manner provided by law. And in reaching

its conclusion in this case the court has not considered any evidence adduced at the hearing on the contested question of removal and does not now in this action determine whether relator did or did not remove from the ward. It might be said, however, that if relator does not have a *bona fide* residence in the ward in which he was elected, he cannot serve, even though seated. And nothing herein contained shall be construed as prejudicing any right or person in any proceeding hereafter brought properly presenting the loss of relator's qualification through removal from the ward and the consequent forfeiture of his office.

And now, April 23, 1928, it is ordered and directed that a peremptory mandamus issue forthwith against the defendants, the town council of the Borough of Minersville, commanding them to place the name of the relator, Stanley Radzievich, upon the roll, to allow him to take his seat as a member of said town council, and to exercise all the rights and privileges of a member of said body until the expiration of his term of office, unless removed therefrom by legal and proper means. The costs of this proceeding to be paid by the defendants.

From M. M. Burke, Shenandoah, Pa.