## Kelly v. Drab

*Paul Callahan,* for plaintiff.
*Lawrence Ruth,* for defendants.

SALUS, *J.,* February 21, 1980—This case and a companion case for appointment of a borough councilman for Conshohocken Borough, No. 82 January 1980, arises from a local brush fire caused by the resignation of councilman Charles F. Kelly after his election and investiture shortly after the first of the year 1980.

The facts are that Councilman Kelly was elected in the November, 1979 General Election as councilman for the Fifth Ward. He joined three other Democrats on council making a four to three split on council. The Mayor of Conshohocken is Republican.

Councilman Kelly was sworn in on January 7, 1980, with others duly elected to Borough Council of Conshohocken. A reorganization meeting was held on January 9, 1980, and Councilman Kelly was elected President of Borough Council with Councilman Edward B. Drab as Vice-President. At that meeting and even after the meeting, several private citizens of the borough expressed strong reservations about Kelly's ability to do the job as President of Council and further had strong criticisms of the redevelopment efforts in the borough. There may have also been some aspersions of Kelly selling out to the opposite party in order to get the presidency of council.

As a result of this furor and because of the upset to his wife and family, Councilman Kelly reviewed his personal situation and as a result, composed a letter of resignation to council dated January 10, 1980, and delivered a copy of same to the Democratic Chairman of Conshohocken, a copy to the Mayor, Francis Ruggiero, and slipped the original under the borough hall door for the secretary of the bor-

ough. The resignation was "effective immediately."

The word of the resignation spread rapidly and many called asking Kelly to reconsider, although he did not indicate he would do so. Upon notice of the resignation, Councilman Drab as Vice-President ordered the borough secretary to notice "his brethren" to a special meeting at 7:30 p.m. on Monday, January 14, 1980, in the Municipal Building "for consideration of and action upon the resignation of Charles F. Kelly." The notice was advertised in the local paper and also sent to all councilmen save Kelly.

As a result of the furor over his resignation and the support for reconsideration, Kelly contacted the borough solicitor on January 11, 1980, concerning a rescission and/or a withdrawal of his resignation, its effect, and the wording of same in writing. A typewritten rescission and/or withdrawal of resignation was prepared, dated and signed January 14, 1980, and delivered and placed on the borough secretary's desk on January 13, 1980.

The January 14, 1980 council meeting was assembled with three members present: Drab, Monacella and Ruggiero. Kelly had not been noticed and the three Democrats absented themselves. No quorum was present, so no action could be taken on the resignation and the rescission, if any. By then, of course, the rescission and/or withdrawal of resignation was known to all of council and the solicitor had been requested to give an opinion as to the resignation and withdrawal of same. Because of the lack of quorum, no business was transacted and a new special meeting was scheduled for January 21, 1980. Again no quorum was present and no action was taken although the

notice to this special meeting was for the express purpose of filling the vacancy. Again, the Democrats did not show.

In the meantime, Drab as Vice-President wanted a special meeting to discuss problems of the Washington Fire Company because the next regular meeting was not until February 13, 1980. None was held, nor was the regular meeting held on February 13, 1980, because of these suits. The instant suit, No. 80-2245 is for a declaratory judgment of whether Charles F. Kelly is councilman or not. The companion suit, No. 82, January 1980, is a petition to appoint Charles F. Kelly councilman, in the event he lost the declaratory judgment action.

The issue here is whether the tender of resignation "effective immediately" is self-executing or does it need an acceptance by formal action of council. A second issue is whether there was formal action at a public meeting of council accepting the resignation or some other type of acceptance of the resignation. A third issue is whether the tender was revoked before any formal action at a public meeting of council or some other type of acceptance of resignation.

The main body of Pennsylvania law likens municipal resignations to long-established contract law. The tender of resignation is considered the offer and the action of the municipal body thereon is the acceptance. Time after time resignations have been ineffective until formally accepted by the municipal governing body. See Edwards v. United States, 103 U.S. 471, 476 (1880); Com. v. Krapf, 249 Pa. 81, 84, 94 Atl. 553 (1915); Com. ex rel. Gast v. Kelly, 255 Pa. 475, 484, 100 Atl. 272 (1917); North Star District School Directors, 73 D. & C. 2d 27 (1975). An opposing point of view is

seen in Com. v. DeCinti, 6 D. & C. 3d 670 (1978), wherein it was held that a resignation was self-executing.

We feel the better view is that resignations require formal acceptance and are not self-executing. In the instant case the letter of resignation has language similar to the DeCinti minority view but differs in that there was a rescission or withdrawal of resignation. Further in DeCinti the person who resigned refused to act or attend meetings after resignation. In the instant case the resignation while "effective immediately" was effective immediately only after the resignation was accepted by the Borough Council of Conshohocken in public meeting and with a duly constituted quorum. The first meeting to consider the resignation was on January 14, 1980, and was called to consider the resignation and act upon it. Before this meeting was held, the rescission or withdrawal of resignation was submitted and, therefore, no vacancy was present for council to act upon. Further, there was no quorum at that January 14, 1980 meeting to take any definitive action of any kind; since the present Borough Code and the former Borough Code are almost identical, prior precedent is as solid today as the Rock of Gibraltar. Clearly DeCinti is a sport restricted to its own facts.

Since no formal action was taken at a public meeting, and since no vacancy was present upon which to act, Charles F. Kelly is and has been a councilman of the Borough of Conshohocken representing the Fifth Ward. See 25 P.L.E. Municipal Corporations §63. The formal acceptance of a resignation can only be made by borough council as a whole with a duly constituted quorum. Without that, there is no duly constituted meeting.

In addition to the above, the Open Meeting Law of July 19, 1974, P.L. 486, sec. 2, 65 P.S. §262, is as follows: "No formal action shall be valid unless such formal action is taken during a public meeting." It is clear that in the instant case, no such action was taken and that the mere notice of the meeting was not an acceptance of the resignation because on January 14, 1980, the purpose of the meeting was to *consider* the resignation and act upon it. Neither was accomplished because of a lack of a quorum.

In passing, the court notes that the stare decisis in this case from the Supreme Court of the United States down to common pleas courts rationalizes resignations on contract principles. For one familiar with constitutional law and the abhorrence of involuntary servitude, acceptance of resignations would create impediments to the free exercise of the right to quit a public service job. Perhaps, however, the rationale of these cases takes into account the political realities of local politics which in these instances are more pressing than constitutional consideration.

Finally, we reach the issue of whether a resignation can be rescinded or withdrawn prior to acceptance by the governing body's acceptance. The answer is an emphatic yes and we find rescission and/or withdrawal of resignation was accomplished in this case. See Steel v. Com., 18 Pa. 451 (1852), and the more recent cogent opinion of Judge Shughart in Application for Appointment of Supervisors for Hampden Township, 5 Cumb. 192, 193 (1955). See also Molino v. Portage Area School District, 67 D. & C. 2d 647, 653 (1974). We have already decided that no acceptance was had because of the withdrawal of the resignation prior to

its acceptance and further, no acceptance was possible because of the lack of quorum from January 14, 1980 and thereafter. If this were not enough, there was no vacancy upon which to accept a resignation. As Judge Shughart said in his opinion at 5 Cumb. 192, 193 (1955): "Since acceptance is necessary to the completion of a resignation, the resigning officer may withdraw his resignation before it has been accepted by the proper authority."

Although we don't decide another issue, we must comment on it for future reference to actions by the borough council. The three Democrats who refused to show up since the meeting of January 14, 1980, were and are skating on thin ice under the Borough Code. It is entirely within our prerogative to remove the three for failure to attend meetings and to perform their duly constituted responsibilities as Councilmen of the Borough of Conshohocken. Because of their dilatory tactics, many things were not done for the good people of Conshohocken including the performance of local government for the benefit of those citizens. To frustrate governmental functions for the motives and with the rationale that politics must be served in accordance with the will of the people in their wards ignores the welfare of the entire citizenry of that borough. Further, it puts political consideration over the responsibilities of good government. It ignores the damage done by simple inaction for political motives and clouds the duties for which the councilmen were originally elected.

Because we do not want to frustrate the votes of the majority of the citizens in each of the wards which these three represent, we are loath to remove them as we can under the Borough Code. Suffice it to say that if such shenanigans persist and give

cause for removal, a second chance will not be afforded.

For the foregoing reasons, Charles F. Kelly is declared a councilman presently with a term dating from January 7, 1980, for four years hence. No vacancy is present in borough council now, nor has there ever been one.

## ORDER

And now, February 21, 1980, Charles F. Kelly is declared councilman in the Borough of Conshohocken for the Fifth Ward, no vacancy of same having occurred.