# Krickbaum's Contested Election.

*Election law—Contested election—Practice, C. P.—Appeals—Review— Certiorari.*

Proceedings by certiorari on a summary petition in an election contest occupy a middle ground between those in common-law actions, and equity suits; and the appellate court, in the exercise of supervisory powers in such cases, will not stop with a mere inspection of the formal proceedings, but will examine the opinion of the court below so far as it may be necessary to ascertain the basis of its action.

*Election law—Election contest—Judge of election de facto.*

In the absence of any evidence of fraudulent or wrongful voting, or of fraudulent or improper counting of votes, the entire poll of votes cast in a district will not be rejected, because a person was sworn and acted as the judge of election in place of the regularly elected judge, under the mistaken idea that he had a right to do so since he had acted as judge in the preceding election in the absence of the elected judge.

In such a case the officer is a judge de facto by color of authority, and the validity of his acts cannot be questioned so far as they affect third persons.

Whole communities of electors are not to be disfranchised for the time being, and a minority candidate forced into an office, because one or more of the judges of election have not been duly sworn, or were not duly chosen, or do not possess all the qualifications requisite to the office.

*Public officers—De facto officers—Color of authority—Definition of de facto officer.*

A de facto officer is one who is in possession of an office and discharging its duties under color of authority, and by "color of authority" is

meant authority derived from an election or appointment, however irregular or informal, so that the incumbent be not a mere volunteer.

Argued April 15, 1908. Appeal, No. 55, Jan. T., 1908, by William Krickbaum, from order of Q. S. Columbia Co., Dec. Term, 1907, No. 32, in election contest of Election of William Krickbaum as Associate Judge of Columbia County. Before MITCHELL, C. J., FELL, MESTREZAT, POTTER and STEWART, JJ. Reversed.

Petition to contest the election of William Krickbaum as associate judge of Columbia county. Before EVANS, J.

From the record, it appeared that the court below rejected all of the votes cast in Mifflin township at an election held on November 5, 1907, and entered an order declaring that George M. Hughes and not William Krickbaum had received a majority of the legal votes cast in the county for the office of associate judge.

*Error assigned* was the order of the court.

*Fred Ikeler*, with him *James Gay Gordon*, for appellant.— This court may examine the whole record and the opinion of the court in a proceeding such as this: Independence Party Nomination, 208 Pa. 108; Mulholland's Case, 217 Pa. 631.

The conduct of election officers, although clearly illegal and in violation of a plain direction of the election laws, will not be allowed to defeat the expressed will of the people, where there is no reason to believe that the officers acted fraudulently, or in bad faith, or that their conduct changed, altered or rendered uncertain the return of the election: Thompson v. Ewing, 1 Brewster, 67; Boileau's Case, 2 Parsons, 503; Daly v. Petroff, 10 Phila. 389; In re Justices of the Peace, 11 Pa. Dist. Rep. 734; Weaver v. Given, 1 Brewster, 140.

As between the contestants and Krickbaum, the respondent, Whitney Hess, was the de facto judge of election in Mifflin township, at the November election: Thompson v. Ewing, 1 Brewster, 67; Clark v. Com., 29 Pa. 129; Campbell v. Com., 97 Pa. 344.

*Geo. S. Graham*, with him *Clyde Chas. Yetter*, for appellee. —It is the undoubted law of the state of Pennsylvania, and

has been unquestioned, that on a writ of certiorari neither the evidence nor the opinion of the court is brought up for review by the appellate court: Yonkin's Contested Election, 13 Atl. Repr. 750; Com v. Ramsay, 166 Pa. 642; Lyon v. Dunn, 196 Pa. 90; Election Cases, 65 Pa. 20; Carpenter's App., 11 W. N. C. 162; Robb's Nomination, 188 Pa. 212; Von Moss's Election, 219 Pa. 453; Mitton's App., 2 Penny. 380.

OPINION BY MR. JUSTICE POTTER, May 25, 1908:

In the opinion of this court, in Independence Party Nomination, 208 Pa. 108, Chief Justice MITCHELL points out, that proceedings by certiorari on a summary petition occupy a middle ground between those in common-law actions, and equity suits. And that the appellate court, in the exercise of supervisory powers in such cases will not stop with a mere inspection of the formal proceedings, but will examine the opinion of the court below so far as may be necessary to ascertain the basis of its action. This statement of the principles and practice by which this court is governed in such cases was again cited and approved in Chester County Republican Nominations, 213 Pa. 64; and it was further pointed out that " where the facts appear upon the record this court will examine whether the judgment is correct upon such facts and may for that purpose consider the opinion of the court as part of the record." See also Mulholland's Case, 217 Pa. 631. The opinion of this court in Von Moss's Election, 219 Pa. 453, is also consistent with this rule, and in that case we took into consideration the facts presented, as found in the opinion of the court below. In the present case the facts are not disputed; they are found and presented by the trial judge as the basis of his action, and it becomes our duty to examine the judgment to see if it is correct upon such facts, and for that purpose, we take them as set forth in the opinion of the trial judge as follows: " The petition of George M. Hughes was filed in this case on the 4th day of December, 1907, to contest the election of William Krickbaum to the office of associate judge for the county of Columbia. At the general election held on the 5th day of November, 1907, in said county, an associate judge was to be elected. On the canvass of the

returns by the judges, it appears that William Krickbaum received 3,043 votes and that George M. Hughes received 3,012 votes. The petition alleged that 107 votes were cast for William Krickbaum, and that thirty-nine votes were cast for George M. Hughes in Mifflin township at said election, and that all the votes cast at said election in Mifflin township were illegal and void and should not be counted for either Krickbaum or Hughes in computing the election returns of Columbia county. That if the votes cast at said election in Mifflin township were not counted George M. Hughes would have received 2,973 votes and that William Krickbaum would have received 2,936 votes. That George M. Hughes received a majority of the legal votes cast for associate judge in Columbia county at the election held November 5th, 1907. The objection to the vote counted for Mifflin township is, that the legally elected judge of election was not permitted to take part in holding the election and that a usurper acted as judge in holding said election." The court below proceeds to find specifically, "1. That at the February election, 1907, in said district of Mifflin township, A. E. Johnson was duly elected as the judge of election, to serve for the ensuing year. 2. That at the next following election in said district, to wit: the June primary election, the said A. E. Johnson did not attend and that thereupon one of the inspectors appointed Whitney Hess as the judge of election, in the place of Johnson, and who, after being sworn, acted as judge during said June primary election. 3. That on the morning of the general election held in said township, on the 5th day of November, 1907, before the polls were opened, the said A. E. Johnson appeared at the regularly appointed place for holding the election in said township and demanded to be sworn in as the regularly elected judge of election. 4. That the other election officers refused to administer the oath to the said A. E. Johnson, and further refused to allow him to sit upon said election board, and perform the duties enjoined upon him as the regularly elected judge of the election for said district. 5. That the said A. E. Johnson persisted in demanding his right to sit as one of the said election board; but notwithstanding his demand, Whitney Hess was sworn in as judge of election by the minority inspector, and then said Whitney Hess and other

members of the board proceeded to conduct the election without Johnson and receive the votes cast at said polling place, counted and made return of the same without the said Johnson participating therein.  6. That Whitney Hess acted as judge of the general election held in Mifflin township November 5, 1907.  That he was not the regularly elected judge of election to hold the November election, 1907, in said Mifflin township.  That there was no vacancy in the office of judge of election in Mifflin township on the morning of November 5, 1907, A. E. Johnson, the regularly elected judge of election, being present at the time of opening the polls and demanding his right to participate in the receiving, counting and return of the votes cast at said polling place.  7. That the election returns from Mifflin township for said election show that 107 votes were cast for William Krickbaum for associate judge and that thirty-nine votes were cast for George M. Hughes for associate judge.

"On the part of the respondent it is contended that the votes of Mifflin township cannot be thrown out.  1. Because the action of Whitney Hess as judge was not in fraud of the rights of either candidate; neither was his appointment fraudulently obtained; nor did his action or the action of the board in allowing him to sit, change, alter or even render uncertain a single vote cast at the election.  2. Because Whitney Hess holding and claiming to hold by virtue of a valid appointment at the June primary election was acting under color of title, and was, therefore, as respects third persons, the de facto judge of election, and his acts as such are binding on the contestant and respondent.

"On the part of the contestant it is contended, that because the election in Mifflin township was held by a judge of election who was not legally elected or legally appointed the return of votes cast at the poll is illegal and cannot be counted."

After conceding that the irregular conduct upon the part of the election officers, is not to be allowed to defeat the expressed will of the voters, unless there be fraud, or such conduct as will alter or render uncertain the result, the learned judge of the court below announced his conclusion that Whitney Hess was not de facto judge of election, acting under color

of title, but that he was a mere usurper, and he therefore rejected all the votes cast in Mifflin township. How he could have reached this conclusion we do not understand. It is directly in the teeth of, and is entirely unwarranted by, his findings of fact; for he found expressly that in truth and in fact, Whitney Hess was sworn in as judge of election by one of the inspectors, and that he then proceeded with the other members of the board to conduct the election, and receive the votes, and counted and made return of them. So that beyond question he was actually, in fact and in deed, the judge of the election. He performed the duties of the office with apparent right, and under claim and color of an appointment, even though it be granted that he was acting under a mistaken authority. But he was in the exact sense of the term an officer de facto. Now the validity of the acts of officers of election who are such de facto only, so far as they affect third persons, and the public, is nowhere questioned. "The doctrine that whole communities of electors may be disfranchised for the time being, and a minority candidate forced into an office, because one or more of the judges of election have not been duly sworn, or were not duly chosen, or do not possess all the qualifications requisite for the office, finds no support in the decisions of our judicial tribunals:" McCrary on Elections (4th ed.), 1897, sec. 251. To sustain this statement, the author cites our own case of Baird v. Bank of Washington, 11 S. & R. 411, where Justice GIBSON said (p. 414): "The question does not depend on whether the appointment is void or only voidable, or whether it emanated from an authority which had full power to make it; but whether the officer has come in under color of right, or in open contempt of all right whatever: The King v. Lisle, Andr. Rep. 163, s. c., 2 Stra. 190. This distinction runs through all the cases. . . . This principle of colorable election holds not only in regard to the right of electing, but also of being elected. A person indisputably ineligible may be an officer de facto by color of election: Knight v. The Corporation of Wells, Lutw. 156. So, even where the office was not vacant, but there was an existing officer de jure at the time: O'Brien v. Knivan, Cro. Jac. 552; Harris v. Jays, Cro. Eliz. 699."

And in Keyser v. McKissan, 2 Rawle, 139, the case of a

county treasurer appointed by county commissioners who had failed to take the oath of office, Justice ROGERS said (p. 140): "The rule which governs the case is, that the commissioners who appointed the treasurer were officers de facto, since they came into their office by color of title. It is a well-settled principle of law that the acts of such persons are valid when they concern the public or the rights of third persons who have an interest in the act done: The People v. Collins, 7 Johns. 554; King v. Lisle, Andrews' Rep. 263. And this rule has been adopted to prevent a failure of justice. . . . That the commissioners, who appointed the treasurer, were officers de facto is certain, as they possessed every qualification of officers de jure, except in the one particular that they had omitted taking the oath prescribed by the constitution. They had at least color of title. It is equally clear that the suit was not brought for their individual benefit, but for the use of the public."

In State v. Oates, 86 Wis. 634, we find this statement: "Within the rule that a de facto officer is one who is in possession of an office and discharging its duties under color of authority, by 'color of authority' is meant authority derived from an election or appointment, however irregular or informal, so that the incumbent be not a mere volunteer."

In the present case, Hess was duly and properly appointed as judge of election at the preceding election, and both he and the other officers assumed that the appointment was good for the remainder of the year, and under this assumption he claimed and was awarded by the other election officers the right to act as judge at the election in dispute. It was a mistake, but the claim and its allowance were enough to give him color of right to the office and to prevent him from being considered as a mere usurper. Certainly the rights of the voters should not be prejudiced by any such irregularity as this. "It may be said that 'color of right' which constitutes one an officer de facto may consist in an election or appointment, or in holding over after the expiration of one's term:" Hamlin v. Kassafer, 15 Ore. 456.

The effect to be given to such irregularities is discussed in People v. Prewett, 124 Cal. 7, where it was said (pp. 12, 13): "The court below found that the persons who served as offi-

cers of the election were not sworn as required by law; and the appellants cite those provisions of the political and penal codes making it a felony to act as an election officer without having been appointed and qualified as such. But these provisions, while imposing penalties upon the person who so acts, do not declare the election void for that cause. But this has been directly decided in Whipley v. McKune, 12 Cal. 352 (and in other cases cited). The principle underlying those decisions is that the rights of the voters should not be prejudiced by the errors or wrongful acts of the officers of the election, unless it shall appear that a fair election and an honest count were thereby prevented."

And the general principle governing such a condition as is here presented is thus summed up in 15 Cyc. Law & Procedure, 316 : " It is the duty of the court to sustain an election authorized by law if it has been so conducted as to give a free and fair expression of the popular will, and the actual result thereof is clearly ascertained; for elections should never be held void unless they are clearly illegal. In the absence of fraud, mere irregularities in the conduct of an election, where it does not appear that the result was affected either by the rejection of legal votes or the reception of illegal ones, will not justify the rejection of the whole vote of the precinct, although the circumstances may be such as to subject the officers to punishment."

And in Wheelock's Election, 82 Pa. 297, in an opinion approved by this court, it was said : " When the application of, technical rules and a strict construction of the acts of the officers, in preparing the election papers and conducting an election, would tend to defeat the will of the people and change the result of an election for an important office, they should not be applied, and all reasonable intendments should be made in favor of the legality of their proceedings."

In the present case the requirements as to time and place of holding the election were entirely fulfilled, and there is no finding that any fraudulent or wrongful vote was offered or accepted. Nor is there even a hint of any confusion or carelessness in the conduct of the election. The record and the undisputed facts show nothing irregular, except the fact that Whitney Hess acted as judge of the election, under the mis-

taken idea that his appointment in place of the regularly elected judge was good for the current year, instead of being good as it was, merely for the preceding election. But this mistake did not in any way result in obstructing the complete expression of the will of the voters, or the production of satisfactory evidence thereof. Under all the authorities, the irregularity was not, therefore, sufficient to avoid the election, or justify the rejection of the entire poll of the votes cast in the district.

We think it is clear that the judge of the court below erred in his conclusion that Whitney Hess was not de facto an officer, and in his further conclusion that as a consequence, all the votes cast at the election in question in Mifflin township must be rejected. The facts as set forth by him, and for the purpose of this inquiry made part of the record, show no basis for such action; and they do on the contrary clearly show that Whitney Hess was de facto judge of election, acting under color of title. The first assignment is sustained.

The decree of the court below is reversed and it is adjudged and decreed, that upon the finding of facts which appear upon the record in this case, William Krickbaum received a majority of the legal votes cast for associate judge, and was elected to said office on November 5, 1907.