## Wilson-Patton Post 536, Inc., License

*Bruce Talbott*, for appellant.

*Furst & Furst*, contra.

*Johnston & Johnston*, for intervenors.

WALKER, P. J., February 4, 1948.—This matter is before the court on an appeal from the decision of the Pennsylvania Liquor Control Board by which they refused to renew the license of petitioner. At an election held on September 9, 1947, a majority had voted

against the granting of licenses in the Borough of Port Matilda which was the municipality in which applicant sought to have its license renewed. From this decision of the Liquor Control Board petitioner presented a petition to the court asking that a time and place be fixed for a hearing relative to an appeal in accordance with section 7 of the Beverage License Law of May 3, 1933, P. L. 252, as amended, for the purpose of hearing petitioner's application de novo. Pursuant to said petition an order was filed by this court fixing Monday, January 26, 1948, at 10 a.m. as the time for hearing in said matter.

The Centre County Commissioners, ex officio Centre County Board of Elections, intervened in said proceeding, as well as Frank H. Weller, Taft Frantz and Erma Steele, the latter three being residents of the Borough of Port Matilda. No objection was filed to the intervention of these parties by petitioner.

On January 23, 1948, a motion to quash was filed by the Centre County Commissioners, intervenors, on the grounds that petitioner had proceeded in accordance with section 7 of the Beverage License Law, which was not applicable to the proceeding at bar. This motion to quash was made returnable January 26, 1948. On the latter date petitioner filed an answer stating that the grounds set forth in the motion to quash were insufficient in law and incorporated in the answer a motion to amend the prayer of its petition by inserting in lieu of a request for a hearing in accordance with section 7 of the Beverage License Law a request for a hearing under the provisions of the Act of June 16, 1937, P. L. 1827, as amended, and prayed for a rule to amend. This answer to the petition was presented after the hearing of January 26th was continued to January 29, 1948, and the rule was made returnable on the latter date at 10 a.m.

On January 29, 1948, the court dismissed the motion to quash and allowed an amended petition to be filed.

Intervenors then objected because the appeal of petitioner had not been taken within the period of 20 days as provided by the act of assembly, the petition stating that under date of January 6, 1948, the said Pennsylvania Liquor Control Board sent petitioner a communication, inter alia, that at an executive session on January 5, 1948, they had refused the application of petitioner for renewal.

The original petition which was filed in its caption stated that this was a proceeding for the renewal of the beverage license, which was in conformity with the prayer as it appeared in the original petition, as a proceeding under section 7 of the act. From the original petition it would appear that the proceeding was under section 7 of the Beverage License Law and that this was an error and so confirmed as such by the request of petitioner in asking for the amendment of its petition as hereinabove set forth. Under the circumstances of this case the ruling heretofore made by the court will not be disturbed.

Petitioner contends that the election which was held in the Borough of Port Matilda on September 9, 1947, was void because the notices which appeared in three papers of general circulation in Centre County and in Port Matilda Borough did not state the place where the election was to be held. The petition filed by applicant sets forth "The Borough of Port Matilda has in fact a specific place at which its elections are held, to wit, the Lykens Theatre Building on High Street in said borough, and this place was not named or set forth in the notices as required by law". The testimony shows that this had been the voting place in said borough for six years and that there was only one voting place in the borough. Sylvester W. Patton, one of the witnesses for applicant, stated that he resided in Worth Township but that he knew of the voting place in Port Matilda Borough. Maurice E. Davis, the secretary of the legion club, testified that a canvass of the

community and of the voters was made prior to and on election day, and in reply to the question: "And in this canvass that you made through the community, as you have indicated was made, the people of course generally knew where the election would be held, did they not?", his answer was: "Yes, I believe they did." The only witness who testified that he did not know where the election would be held was Roland A. Martin and he testified that he and his wife did not know but he learned where it was and that both of them voted on the day of the election. Testimony was likewise offered that on the voters' street list as of the time of the primary election, 1947, there were 345 names of those who were entitled to vote and of this number 298 appeared and received ballots. Testimony was offered accounting for the reason why the others whose names appeared on the voters' street list did not vote, with the exception of three registered voters. The others who did not vote and whose names appeared on the list had either died, moved away, were physically handicapped on the day of election, or refused to vote when requested. Maurice Davis, the witness for applicant and the secretary of the legion club, testified that in his opinion at least 95 percent of those who were members of the club and were registered and were eligible to vote in Port Matilda Borough did vote. Both sides did everything in their power to see that the eligible voters cast their ballots. It is quite evident that the outcome of the election would not have been changed even if the notice had contained the words that might have been necessary to inform the voters as to where the election was to be held, of which they were aware as indicated by the large vote cast.

The court is aware of the fact that the court held in the case of Frederick H. Harper, Jr., Inc., Appeal, 150 Pa. Superior Ct. 569, which was a case where no notice had been published, that the election was null and void. Likewise, in the case of Kittanning Country Club's Liquor License, 330 Pa. 311, where the form of the

ballot was in dispute because there were two election districts and the ballot was so framed that the question which was submitted was whether or not the voters favored a license in only one of the voting districts and not in the municipality as a whole, the court held that due to the form of the ballot the election was null and void. This is readily understood because it would be difficult to ascertain from the records just what the real sentiment of the people of the entire township was as each precinct was only voting with reference to their immediate locality. The court said, on page 320: "The election not being an expression of the will of the people, in the manner provided by statute, it follows that the refusal of the applications for licenses was not justified." It can hardly be said in the case at bar that the result of the election was not an expression of the will of the people.

In the case of Kimmell's Appeal, 52 D. & C. 279, the judge, referring to the Kittanning Country Club Liquor License case, said (p. 283) : "We believe that when Mr. Justice Barnes used the words 'statutory form' he was referring to the form of the ballot and not to the form of the notice. The Kittanning Country Club case did not deal with defective notice. The attack there was on the form of the ballot. The two cases cited in the quoted language both concerned defective ballots. In the present case, the form of the ballot was admittedly regular."

This is true in the case at bar as no question has been raised with reference to the form of the ballot. In this same case the court refers to the case of Harper's Appeal, 150 Pa. Superior Ct. 569, and concludes (p. 282) :

"It is clear that Harper's Appeal is authority for the proposition that there must be notice of local option referenda and that such notice is a fundamental preliminary. However, our analysis of the reasoning of the Superior Court leads us to conclude that the case is not necessarily authority for the proposition that the

notice (as opposed to the ballot) must be in the exact statutory language. In Harper's Appeal, there was an entire failure to give notice. In the present case, a notice was published. Admittedly it varies from the statutory requirement, both as to form and as to time of publication. The question for determination is whether these variations are fatal."

The court concluded that the variations were not fatal and dismissed the appeal. An appeal from this decision was taken to the Superior Court as reported in 157 Pa. Superior Ct. 59 and was dismissed. The lower court in its opinion refers to the number of votes cast, stating that it was a higher proportion than in other districts not voting on local option and also to the fact that elections had been held at the regular polling place for a great many years, and that the referendum was held in conjunction with the regular primary election. The questions raised in the lower court in Kimmell's Appeal were that the advertisement did not appear in the papers in accordance with the act of assembly either so far as the form was concerned or the time, and exception was also taken to the fact that the general notice which did appear in the paper contained a statement to the effect that the elections would be held at the usual polling places. The time when the notices are to appear in the papers are statutory provisions provided by law, but the court held that in its opinion these irregularities were not such that it should decree an invalidation of the election.

The Superior Court in its decision in the Frederick H. Harper, Inc., Appeal, 150 Pa. Superior Ct. 569, refers to the case of Commonwealth ex rel. Gast v. Kelly, 255 Pa. 475, 100 A. 272, decided by the Supreme Court. In this case, which has been referred to frequently by the Supreme Court and was upheld in principle in the case of Williamsport Poor District et al. v. Lycoming County, 309 Pa. 405, 409, 410, the decision of the court was based upon the fact that notwithstanding no proclamation had been made, yet because the

electors had general knowledge of it and a reasonable number of votes were polled, the election was upheld. In the case at bar an election notice was printed in three newspapers of general circulation and the evidence shows that all the people who were eligible to vote and able to vote and who wanted to vote cast their ballots, with the exception of three. The court in its opinion in Gast v. Kelly, supra, at page 481 stated:

"On the established facts in this case, the failure to put this designation in the precise language of the statute did no harm; for it is plain beyond doubt that the electors knew the situation and that they were voting to fill the unexpired term of Dr. Goodrich. We recently had occasion to discuss a complaint somewhat akin to the one now before us, in Knight v. Coudersport Borough, 246 Pa. 284, 289, and there said: 'If the law declares a specified irregularity to be fatal, the courts will follow that command, irrespective of their views of the importance of the requirement. In the absence of such a declaration the judiciary endeavor, as best they may, to discern whether the deviation from the prescribed form . . . had or had not so vital an influence . . . as probably prevented a full and free expression of the popular will. If it had, the irregularity is held to vitiate the entire return; otherwise, it is considered immaterial.' "

It would, therefore, appear by this decision of the Supreme Court that the main question for determination in cases of this character is whether or not there has been such a variation as prevented a full and free expression of the popular will. That this was true in the election at bar which this court is asked to invalidate cannot be averred.

In the Harper Appeal, supra, the Superior Court in rejecting the principle laid down by the Supreme Court in Commonwealth ex rel. Gast v. Kelly, above cited, refers to the passage from the Kittanning Country Club's Liquor License Case, 330 Pa. 311, at page 320, wherein the court said:

"Here the point in issue is not the manner in which an election was conducted, or a collateral attack upon the result thereof, but whether an election was ever held upon the subject-matter of the controversy."

The latter case was where the form of the ballot was defective and it would naturally follow that there might be some question whether the vote which was cast was a free expression of the popular will because it could not be determined whether the voters understood the real question which was to be voted upon, due to the manner in which it appeared on the ballots.

In the case at bar the result of the vote indicates a full and free expression of the popular will on the subject in controversy, and the court feels that the irregularity in the election notice is immaterial and in no way affected the result of the election. The court feels justified in arriving at this conclusion because of various opinions of the Supreme Court commencing with Commonwealth ex rel. Gast v. Kelly, 255 Pa. 475, and others which the court will refer to: Section 10 of the Act of June 24, 1895, P. L. 212, 17 PS §198; Sherman v. Welsh et al., 87 Pa. Superior Ct. 282.

The courts have been very hesitant about the invalidation of an election as is disclosed by the opinion of the court in Oncken et al. v. Ewing, 336 Pa. 43, 47, as follows:

"The invalidation of a public election is a judicial act of serious import, and is justified only by circumstances of the most compelling nature. Of course, there may be cases where there has been deliberate fraud on the part of election officials; or where a statute expressly provides that certain mistakes or defects in the ballots shall invalidate the election; or where some fundamental preliminary of the election has been ignored, as in Nyce v. Board of Commissioners, 319 Pa. 353; or where, as in Kittanning Country Club's Liquor License Case, 330 Pa. 311, the form of the ballot is so lacking in conformity with the law and so confusing

that the voters cannot intelligently express their intentions; in such instances it may be proper and necessary for a court to nullify an election. But where the irregularity complained of could not reasonably have misled the voters and did not result in the question at issue being presented to them unintelligibly, the election cannot be judicially overturned because of some innocuous deviation from a statutory requirement which might have been previously rectified through resort to the remedy given by the law for that purpose."

In Winograd et al. v. Coombs et al., 342 Pa. 268, a case involving a referendum on Sunday movies and in which many acts of misconduct upon the part of the election boards were shown, yet because there was no fraud proven the court held that the facts did not constitute such irregularity as to invalidate it.

In the case of Bauman Election Contest Case, 351 Pa. 451, the court held that the marking of ballots as disclosed in the case itself were minor irregularities and that the power to throw out a ballot under the circumstances, like the power to throw out the entire poll of an election district for irregularities, must be exercised very sparingly and with the idea in mind that neither an individual voter nor a group of voters is to be disfranchised at an election except for compelling reasons.

In the case of Williamsport Poor District et al. v. Lycoming County, 309 Pa. 405, the court held: "Where the majority of the persons voting at an election are in favor of the establishment of a county poor district, and the president judge, in a certificate attested by the prothonotary of the county, certifies to the counting of the vote in open court and to the result thereof, the requirements of the Act of May 12, 1921, P. L. 538, are sufficiently met, though the return board adjourned without certifying the result of the vote."

In the lower court case of Staub's Appeal, 57 York 194, the notice for the referendum in the primary election proclamation, in stating the form of the question,

failed to set forth the name of the district where it was to be determined whether or not licenses should be granted. In that case the court said (p. 195) :

"It would seem only proper to credit the electors with the general knowledge that when a local option issue is voted upon in their township that it pertains only to their own municipal confines. It is therefore apparent that we must conclude that the notice contained in the election proclamation was not only a substantial, but an actual compliance with the requirements of the election code, and if there was any slight irregularity whatever in the notice it was innocuous and immaterial. The will of the electors of Conewago Township has been expressed on this question and it may not be lightly set aside by the court except for actual and positive invalidity. This conclusion is reached after studied consideration of the opinion of the Superior Court in the case of Frederick H. Harper, Jr., Inc., Appeal, 150 Superior Ct., 569, in which it was held that a local option referendum was strictly governed by statute and that the statutory notice thereof is a fundamental preliminary and departure therefrom may not be considered an immaterial irregularity. That case is clearly distinguishable from the instant one in that there was no actual public notice of the referendum given in the proclamation at all in the Harper case. Such an omission is of course fundamental and renders the referendum held thereunder invalid.

"In passing it might be noted that more than one-half of the municipalities in York County have exercised their privilege under the liquor laws to exclude the sale of liquor or malt beverages or both under election proclamations subject to the same criticism here invoked. In many of those instances the contests were spirited and in some the result was determined by a close margin. To probably invalidate all of those former referenda would have a far reaching and perhaps deleterious effect on the electorate of York County, who in proper elections have so clearly expressed their

will on this important question and to whom it is now a closed issue, although if satisfied that there had been an invalid or illegal referendum in the instant case the court would be bound to so hold. The invalidation of a public election is a judicial act of serious import, and is justified only by circumstances of the most compelling nature."

The Superior Court in the case of Wilson Liquor License, 157 Pa. Superior Ct. 55, held that certain irregularities which were raised in that case were trivial and inconsequential and would not justify any court in nullifying the election. The irregularities which were statutory in their nature and which related to the petitions for the referenda, the failure of the board of county commissioners to formally place upon their minutes the resolution provided for in the act of assembly, an advertisement of the election two successive weeks more than 10 days immediately prior to the date when it was held, that the specimen ballots were defective and they had no perforated corners and were not numbered, that the election board officers had not been elected in accordance with article 18, sec. 14, of the Constitution of Pennsylvania, and that the votes were not properly counted by the election boards, were found to be matters which were not essential to the free expression of the will of the voters.

In the recent case of Long v. Cochran et al., County Commissioners, 358 Pa. 129, the Supreme Court affirmed the opinion of the lower court when the latter held that the petitions which were folded together twice and which were presented in that form to the county commissioners so that an election might be held in the Township of Fairfield in Westmoreland County relative to the granting of liquor licenses was sufficient compliance with section 909 of the Election Code of June 3, 1937, P. L. 1333, 25 PS §2869, which provided: "If more than one sheet is used, they shall be bound together when offered for filing if they are intended to constitute one petition." The court said:

"In the absence of a more explicit requirement by the Statute and in the absence of any judicial interpretation of either of our Appellate Courts as to how the word 'bound' is meant, it would appear proper that this Court, in passing on the question, would be going beyond its province in placing a strained construction on the meaning of, and the legislative intent with respect to, the verb 'bound'. To do so would be to defeat the clear intent of the electors of Fairfield Township who expressed their will and signed the petitions that the two questions be submitted to the voters."

This question was further discussed in Simon Election Case, 353 Pa. 514, 46 A. (2d) 243, as follows (p. 519) :

"The failure of the County Board of Elections to comply with the plain requirements of the statute in examining and computing the military ballots is condemned. The Commonwealth expects that all officials charged with the duty of guarding and computing the votes of qualified electors will obey the letter and spirit of the applicable law in respect to that duty; only by such obedience to the law will the possibility of fraud be reduced to a minimum.

"The question of whether or not this entire military poll shall be rejected because of the irregularities specified and proved is analogous to the question which has often been before the courts as to whether the entire poll of an election district shall be rejected because of irregularities on the part of officers conducting the election and making the electoral count. The courts have never been able to lay down a precise standard by which it can be determined in a given case whether the irregularities are of sufficient magnitude to justify the rejection of an entire poll in any district in which the question arises. The facts in each case must be considered and a determination reached as to whether justice is more likely to be done by counting the votes, despite the irregularities, or by refusing to count them because of the irregularities. In West Mahanoy Town-

ship's Contested Election, 258 Pa. 176, 179, Chief Justice Brown, speaking for the court, said: 'For mere irregularities in conducting an election it is not to be held void, even though the election officers may be subject to punishment for misconduct. This is so because the rights of voters are not to be prejudiced by the errors or wrongful acts of the officers of the election, unless it appears that a fair election and honest count were prevented. Krickbaum's Contested Election, 221 Pa. 521. Nor is the mere casting of fraudulent votes sufficient to throw out the return from an election district.' This court expressed a like opinion of the effects of election irregularities in Twenty-eighth Congressional District Nomination, 268 Pa. 313, and in Focht's Appeal, 275 Pa. 449. In the Contested Election of Edwin R. Wheelock, 82 Pa. 297-299, the action of the lower court in refusing to set aside the entire poll in an election district was sustained by this court on grounds which we said were 'sufficiently stated in the opinion of the lower court.' The lower court said: 'An election is the embodiment of the popular will, the expression of the sovereign power of the people. When the application of technical rules and a strict construction of the acts of the officers, in preparing the election papers and conducting an election, would tend to defeat the will of the people and change the result of an election for an important office, they should not be applied, and all reasonable intendments should be made in favor of the legality of their proceedings. When, however, it is alleged that there is actual fraud in the election, or that the ballot-box has been tampered with, or illegal votes received, or the careless or fraudulent acts of the officers have mixed and confused the ballots, the duty of the court is equally plain, and every legal facility should be afforded to purge the poll; and when the acts of the officers are so fraudulent and irregular that the *result cannot be ascertained*, then the entire poll is rejected.' In Fish's Election, 273 Pa. 410, this court said, p. 417: 'More-

over, to eliminate an entire poll, though no harm has actually been done, merely because public officials did not perform their duty properly, would result in the very wrong sought to be prevented; for if they are unscrupulous (knowing, as they always do, where votes antagonistic to their desires will be cast), they can wrongly fit up the election room and booths in every district which they desire shall be thrown out, and thus indefinitely control elections, even for their successors, pledged in advance to repeat the wrong.' "

Counsel for applicant states that the provision with reference to the advertisement is mandatory and therefore must be complied with. In the case of Knight v. Coudersport Borough, 246 Pa. 284, 289, the court said:

"In other words, the court found the case to be free from the taint of fraud; and in view of the prior findings to the effect that no elector appeared to have been influenced or embarrassed in any manner by the commissioners' mistake, the court held that to set aside the election would be an undue disfranchisement of the electors of the district, citing, Black on Interpretation of Laws (571), where it is said, 'If the law declares a specified irregularity to be fatal, the court will follow that command, irrespective of their views of the importance of the requirement. In the absence of such declaration the judiciary endeavor, as best they may, to discern whether the deviation from the prescribed forms of law had or had not so vital an influence on the proceedings as probably prevented a full and free expression of the popular will. If it had, the irregularity is held to vitiate the entire return; otherwise, it is considered immaterial. It has been sometimes said, in this connection, that certain provisions of the election laws are mandatory and others directory. These terms may perhaps be convenient to distinguish one class of irregularities from the other; but strictly speaking all provisions of such laws are mandatory, in the sense that they impose the duty of obedience on those who come within their purview. But it does not

therefore follow that every slight departure therefrom should taint the whole proceedings with a fatal blemish. Courts justly consider the chief purpose of such laws, namely, the obtaining of a fair election and an honest return . . . and in order not to defeat the main design, are frequently led to ignore such innocent irregularities of election officers as are free of fraud and have not interfered with a full and fair expression of the voter's choice.' We concur in the views so well stated by the learned court below. When a ballot is not lacking in any matter essential to a free expression in statutory form of the will of the voter, in the absence of fraud, the applicability and completeness of the remedy under the Act of 1893, supra, seem so clear as to require no further discussion; and the conclusion that, under the circumstances at bar, the election should not be set aside, is fully sustained, in principle, by our own cases: See, Wheelock's Election, 82 Pa. 297, 299; Krickbaum's Contested Election, 221 Pa. 521, 525, 528.

"Of course, had the statute expressly provided that a mistake of the character of the one here complained of, should invalidate an election, the rule of Foy's App., 228 Pa. 14, would apply; but in that instance while the election was declared void, yet, we recognized the principle that even in the presence of an express statutory mandate, a judge should be most careful in exercising his power to annul an election, saying (p. 19), 'A court ought always to be slow to set aside an election . . . but when the legislature has ordained that under a certain state of facts it shall so act, and such facts plainly appear upon the record, the duty is clear, and there should be no hesitation about declaring the election invalid.' "

From the law as it has been set forth in the various cases which have been referred to by this court and as applied to the facts of this particular case, the court concludes that the vote shows that there has been a full and complete expression of the will of the people, that

the failure to set forth in the notice the place where the election was to be held is an error, but that the deviation from the prescribed form had no vital influence on the result of the election nor did it prevent a full and free expression of the popular will, that the invalidation of an election is a judicial act of serious import and should only be acted upon in that manner where justified by circumstances of the most compelling nature which do not exist in this case, as no harm has been committed by reason of the failure to include this provision in the notice and greater harm would result if the entire vote of the district would be rejected. The court further feels that this at the best is an innocuous regularity and that justice is more likely to be done by the upholding of the election than if the same is declared to be null and void.

The court takes cognizance of the fact that elections at the same time were held in two other districts in this county and that they likewise would have to be declared null and void for the same reason. The elections in all three districts were very spirited ones, every effort was made to have a full and complete expression of the will of the people, and that result was definitely attained.

We feel as was said by the court in the case of Kimmell's Appeal, supra, that this conclusion "is supported by the Statutory Construction Act of May 28, 1937, P. L. 1019, sec. 58, which provides that, with certain exceptions which do not apply to the present situation, laws shall be liberally construed to effect their objects and to promote justice. This is not a wet and dry question so far as the court is concerned. It is our view of the law that judicial review should not be so extended as to invalidate an election under the circumstances of this case."

As a result, the following order is hereby directed to be entered.

And now, to wit February 4, 1948, the appeal is dismissed at the cost of appellant.